JIM WILLIAMSON v. THE STATE.

*No. 1231.   Decided June 24th, 1896.*

**1.   Confessions Made While in Jail.**

The confessions of a defendant, if freely and voluntarily made, while he was in jail, to the sheriff after he had been warned by that officer according to law, are admissible as evidence against him.

**2.   Postponement.**

Where no showing is made as to the materiality of the alleged testimony of an absent witness, it is not error for the court to refuse to postpone the trial for the arrival of such witness.

**3.   Murder—Evidence—Res Gestæ—Declarations of Deceased.**

On a trial for murder, where a witness testified, that he witnessed the beginning of the difficulty, and states the facts; among others, that defendant rode in the direction of deceased and got behind a tree and fired two shots at deceased before the latter fired at all; that the parties then exchanged several shots, and when the shooting stopped, deceased came to the house and asked witness, who it was that had been shooting at him, and when witness told him it was defendant, deceased said: "I guess you will believe what I have been telling you about these parties, won't you?" And, upon objection, the court admitted, as res gestæ, all the testimony except the remark of deceased which is quoted, which remark was excluded by the court. Held: The ruling was correct.

**4.   Jury Law—Householder—New Trial.**

Where the fact is ascertained after verdict, that a juror who had qualified himself on his voir dire examination, as to his being a freeholder in the State and householder in the county, was not in fact qualified in this particular: Held: Where the question is raised for the first time after verdict, it will not afford the basis for a new

trial in the absence of a further showing that probable injury resulted to defendant by reason of the service of such juror on the trial. Following, Leeper v. State, 29 Tex. Crim. App., 63.

5. New Trial.

Where defendant asked a new trial in order to obtain the testimony of a witness to prove that his confessions, to the sheriff having him in custody, were made upon a promise, on the part of the officer, that he would use his influence with the authorities to procure defendant's immunity from prosecution; which statements by defendant are denied in the affidavits of said witness and said sheriff. Held: The motion for new trial was properly overruled, as to this ground of the motion.

APPEAL from the District Court of Wharton. Tried below before Hon. T. S. REESE.

This appeal is from a conviction for murder in the first degree, the punishment being assessed at death.

The indictment charged appellant, and George Williamson jointly, with the murder of E. C. Crocker, in Wharton County, on the 19th day of May, 1895, by shooting him with a gun. This appellant, Jim Williamson, was alone tried in this proceeding, with the result as above stated.

In the difficulty E. C. Crocker, Mrs. E. C. Crocker and their son, a young boy, were all killed. The record discloses, as the origin of the trouble, that the deceased (Crocker) and a party by the name of Day, had some trouble about some land and Crocker killed Day. F. Martin was a witness against Crocker in the case. The fuss grew out of the land claim. It also appeared that afterwards the defendant and Crocker had a difficulty at an election, in which Crocker attempted to use a gun, but was disarmed. On the afternoon of May 19th, 1895, it being Sunday, deceased was driving his oxen across the prairie towards his house, and defendant and one Gus Colburn were also going across the prairie, and, when they got in sight of Crocker, defendant turned towards Crocker, got down from his horse behind a tree, shot two shots at him, when Crocker turned and commenced shooting at him. After exchanging several shots Crocker retreated to the house of one Emmett Colburn, which was near by, and asked Colburn, who had witnessed the shooting, who the parties were that had been shooting at him? and when Colburn told him that it was defendant and Gus Colburn, deceased remarked, "You will now believe what I have been telling you about these parties trying to kill me, won't you?" [This declaration by the deceased was excluded by the court from the jury.—Reporter.]

The evidence showed that defendant and Gus Colburn rallied their friends and surrounded the house in which Crocker had taken refuge, and during the night killed Crocker, his wife and son, who had come to his rescue. The confessions of defendant, made to Sheriff Rich, contain a very concise statement of the circumstances attendant upon the killing. Sheriff Rich, testified: "I was sheriff of Wharton County, at the time of the Crocker murder, and, with the assistance of others, arrested the parties. Sheriff Reese was with me awhile when the arrests were made. Some three or four weeks after the arrest, and after the examining trial of the parties, Jim Williamson made a statement to me;

tried to discourage him, and warned him and told him not to talk, that his statements might be used against him and could not be used for him. He would tell me about the killing. I don't know anything about the defendant ever having made a statement to Sheriff Reese of Colorado County. The defendant never was turned over to Reese by me. Reese was with me a little while after the arrests. The defendant, Jim Williamson, told me, that on Sunday evening, the 19th of May, 1895, he and Gus Colburn, left the arbor, where they had singing, and started to go over to John Rickard's, that when they got out in the prairie close by Emmett Colburn's house, they saw old Crocker driving a yoke of steers. When they got up in 200 yards of him, Crocker shot at him (Williamson) and they exchanged several shots, and old Crocker ran to E. Colburn's house and he got his horse and started on with Gus Colburn and they met Frank Martin and Jim Rickard, and told them about the shooting, and Frank Martin said, 'less go and kill him,' and we all went down to the crib, and the old woman and boy came and went into the house, and that Emmett Colburn waved his hand and told them to go back; that the boy started out and they shot at him and made him go back, and then the old woman started out and they tried to stop her; shot at her, but she kept going, and Frank Martin got on his (Williamson's) horse and loped down to her and shot her down and came back; then it was near night, and Frank told old Emmett Colburn he had better leave, and they guarded the house until in the night. They sent Gus for Jim Martin to come when they got to the crib, and then sent him for old Geo. W.. In the night some time, they heard Crocker moving around, and heard him run against the stove, and Jim Martin fired into the room with a Winchester, and then they made some balls out of a blanket they found on the fence and saturated them with coal oil and threw them in the house, and would shoot into the house. That Frank got slightly shot, and then they threw more balls in, and old Crocker had got up on a joist and Frank shot him in the bowels and he fell on the bed and broke it down, and was crawling around on the floor and he passed the door; there was a cat hole in the bottom of the door and he (the defendant) shot Crocker in the head, and, that Crocker then got on the bed and they pushed the door open and all of them then shot him with guns, and John Rickard shot the boy. And, that then they got a wagon and horses and loaded the old woman on the wagon and then got the man and boy. And Frank and Jim Martin took them off. And he said, then, that his father (old Geo. Williamson) never did come there that night at all."

Some ten days after the murder, the bodies of Mr. and Mrs. Crocker and the boy were found in a thicket of low bushes, at the head of Seamore's pasture, about five or six miles from the place of the killing—to which place they had been hauled in a wagon, on the night of the killing.

*W. W. Glass*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death, and prosecutes this appeal. On the trial of the case the State proved by Sheriff Rich that the defendant, while in jail, stated to him, "that he (defendant) was present, with Frank Martin and James Martin and John Rickard, at Emmett Colburn's house, at the time E. C. Crocker and his wife and child were killed, and that he was acting with them in the killing of said parties; that said Frank Martin killed Mrs. Crocker, John Rickard killed Wesley Crocker (the little boy), and that he (defendant) shot E. C. Crocker, through a hole in the door." This was objected to by the defendant on the ground that the defendant was in jail, and had not been warned according to law by the sheriff when he made said statement. The bill of exceptions shows conclusively that the defendant was fully warned before he made the statement, and that the same was freely and voluntarily made, and in our opinion there is no question as to the admissibility of the evidence. The third bill of exceptions raises the question as to the action of the court in refusing to postpone the case to send to Colorado County for Sheriff Reese to testify on behalf of the defendant. It appears that on the examination of Sheriff Rich, of Wharton County, by the defendant, he asked him, "if defendant was not in custody of Sheriff Reese, of Colorado County, who was assisting in the arrest, and that if said Reese did not promise the defendant immunity if he would make a confession?" The witness, Rich, in response to this question, stated that the defendant was not in custody of Reese at any time, and that the only statement he knew of was made to him, as testified about, and that he did not know of any inducements ever having been offered by Sheriff Reese to defendant to make a confession. The defendant then applied for, and had issued, an attachment for Sheriff Reese as a witness, but no statement was made as to what said Reese would testify to as to any confession made to him by said defendant. The court refused to wait for said witness, as it was not shown that his testimony would be material. The defendant then excepted. The court, however, postponed the further hearing of the case until the next morning, but, on suggestion of the defendant's counsel, went on with the argument that evening. The witness is not shown to have arrived, nor any further request made to postpone the case for his arrival, from Colorado County. In this action of the court we see no error. It is not shown that during the progress of the trial the defendant was taken by surprise at the testimony of Rich, and that the testimony of Reese then for the first time became necessary. If he was a material witness, he should have been attached before the trial of the case. However, no showing is made as to the materiality of this witness, and certainly the court should not be called upon to postpone the trial of the case until the arrival of said witness, when the testimony of said witness was not shown to be material. Looking to the motion for a new trial, we find Reese's controverting affidavit attached thereto, in which it is stated that Reese would not have sworn with regard to a confession by the defend-

ant, as this bill of exceptions appears to indicate that he would have sworn, but that he fully warned appellant before his confessions were made. The State proved by the witness, Emmett Colburn, that he saw the beginning of the difficulty; that he saw the deceased driving a yoke of oxen across the prairie towards his home, and saw the defendant and Gus Colburn riding across the prairie towards Henry Colburn's place, when said Colburn turned back, and the defendant turned and rode in the direction of the deceased, and got behind a tree, and pulled his gun and shot two shots at the deceased before the deceased fired a shot, and then there were several shots exchanged between defendant and deceased, and, when the shooting had stopped, deceased came to the house of the witness, and asked witness who that person was that was shooting at him, and witness told him it was defendant, and deceased said, ''I guess you will believe now what I have been telling you about these parties, won't you?'' This was objected to on the part of the defendant because he was not present, and that it was hearsay. The court, in approving the bill as to this matter, explains that he admitted the first part of said testimony as being a part of the res gestæ; it being the beginning of the difficulty in which deceased was killed, and a very short time after the first shots were fired. He excluded that part of it, however, in which Crocker responded to witness, ''I guess you will believe now what I have been telling you about these parties, won't you?'' as relating to a former transaction committed. And the court further states that this action appeared to be entirely satisfactory to the defendant at the time. In our opinion, the action of the court was proper. On motion for a new trial in this case, appellant shows, by his bill of exceptions, that Ross McCain was a juror in this case, and was brought in as a talesman after the original special venire had been exhausted, and after the defendant had exhausted all of his challenges; that said McCain answered on his voir dire that he was a qualified voter in the county and State, and that he was a householder in the county, and a freeholder in the State, and in every way qualified himself as a juror to try said case. Defendant shows that on his motion for a new trial he attacked the qualifications of the said juror, McCain, on the ground that he was not a householder in the county, nor a freeholder in the State, and offered evidence to show that said juror was neither a householder in the county, nor a freeholder in the State. Said evidence the court declined to hear upon the hearing of said motion for a new trial, to which ruling of the court the defendant then excepted. Said bill does not show that although the juror qualified himself as a householder in the county, and a freeholder in the State, the defendant was not aware of the contrary at the time. Moreover, where this question is raised for the first time after verdict, it will not afford the basis for a new trial, in the absence of a further showing that probable injury resulted to appellant by reason of the service of such juror on the trial. See, Leeper v. State, 29 Tex. Crim. App., 63. Appellant, in his motion for a new trial, insists that the court should grant a new trial for the want of the testimony of Sam

H. Reese, sheriff of Colorado County. He states that he can prove by said Reese that his confession was made while under arrest, and that it was on account of a promise made by Sam H. Reese, who was co-operating with Sheriff Rich in his arrest, and who had him in custody at the time, that if he would make a confession he would use his influence with the authorities to procure his immunity from prosecution, and that he would not have made such confession but for such promises. In reply to this the State produced the affidavit of said Reese, who stated that, in so far as the application for a new trial stated that said Jim Williamson (defendant) made a confession in regard to the Crocker murder to him (Reese) under promise of immunity from prosecution or under promise that he would use his influence with the Wharton County authorities to procure him immunity from prosecution, the same is false and untrue, and that the statements made by Jim Williamson were voluntarily made by him after being warned as the law directs. There is also the affidavit of Sheriff Rich to the same effect. These answers, we think, effectually dispose of the motion for a new trial on this ground. We have examined the charge of the court carefully, and in our opinion it is not subject to the criticism made by the appellant. The charge on accomplice's testimony is full and clear, and is applied to the witnesses whose testimony tended to show they were accomplices, and distinctly told the jury that the testimony of one accomplice did not corroborate another accomplice. And the court also correctly stated the purpose for which the evidence in regard to the killing of Mrs. Crocker and the boy, Wesley Crocker, was admitted. The court fully charged on murder in the second degree, and there was no occasion to give the special charge asked by the appellant on that subject, even if it contained the law. There was nothing in the case to call for the charge on manslaughter asked by the defendant. Indeed, to our minds, the evidence shows nothing short of a most atrocious case of murder in the first degree. There being no errors in the record, the judgment is affirmed.

*Affirmed.*

[NOTE.—Appellant's motion for rehearing, filed July 11th, 1896, was overruled without a written opinion.—Reporter.]