## GEORGE WILLIAMSON v. THE STATE.

*No. 833.  Decided May 27th, 1896.*

**Murder—Accomplice Testimony—Evidence Insufficient.**

See opinion for facts, upon which it is Held: A judgment of conviction for murder is not sustained, it being based alone upon the uncorroborated testimony of accomplices.

APPEAL from the District Court of Wharton. Tried below before Hon. T. S. REESE.

Appeal from a conviction for murder in the first degree; penalty, a life term in the penitentiary.

This is a companion case to the cases of Jim Williamson v. State, 36 Tex. Crim. Rep., 225; and Frank Martin v. State, 36 Tex. Crim. Rep., 632. The facts will be found fully stated in those cases, and in the opinion below.

[No brief for appellant.]

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and given a life sentence in the penitentiary, and prosecutes this appeal. The appellant was charged with the murder of Mrs. Nancy Jane Crocker. It appears from the evidence that the difficulty occurred in the afternoon of the 19th day of May, 1895, between Jim Williamson, Frank Martin, John Rickard, and Gus Colburn, and old man Crocker. The difficulty began between Jim Williamson, a son of the appellant in this case (George Williamson), and old man Crocker, near the house of one Emmett Colburn. After some shots were exchanged, old man Crocker retreated to the house of Emmett Colburn. Jim Williams, Frank Martin, John Rickard, Jim Martin, and Gus Colburn appear to have surrounded said house. In a short time Mrs. Nancy Jane Crocker and little boy came from the house of Crocker, which was not a great distance away, she bringing a gun to her husband. The little boy attempted to leave the house, and they shot at him. He went back. Mrs. Crocker attempted to leave, and got off some little distance from the house before they discovered her. Jim Williamson and Frank Martin halted her, but she would not stop. She kept on, and Jim Williamson got on his horse and pursued her. She had got some three or four hundred yards from the house, and he shot her down. The parties then appear to have laid siege to the house, and fired into it. In the meantime, they sent one of the party, Gus Colburn, after George Williamson (the defendant), who lived about a mile and a half from there. The defendant was not at home when the messenger arrived, but returned late in the night, in company with Godfrey Winzenreed. The latter went on to his home, and the appellant then got his shotgun, and came over to the scene of the difficulty. When he got there, he remarked: "By God, boys! I wasn't at home; I was off horse hunting. If I had been at home, I would have been on hand when the first shot was fired." When he arrived, the parties then present had already succeeded in killing old man Crocker and the boy. Mrs. Crocker, whose body was then lying some three or four hundred yards from the house, was then thought to be dead or mortally wounded. It was suggested that the bodies should be disposed of. A wagon was procured, and some poles placed upon it. The parties then went with the wagon down to where the body of Mrs. Crocker was lying, in the prairie. When they got there, George Williamson (the defendant) and Jim and Frank Martin went up to where Mrs. Crocker was. Gus Colburn and Jim Williamson remained near the wagon, which was about ten steps from where Mrs. Crocker was lying. The witness Gus Colburn testified at this point that, when these parties went up to Mrs. Crocker, he did not hear her say anything, but Martin and George Williamson came back to the wagon, and he heard them talking about who should shoot her. The

two Martins and George Williamson then went back to Mrs. Crocker, and witness heard a shot fired; did not see who shot her. After this, they placed her body in the wagon, and then went back to the house, and got the body of the old man and the boy, and carried them about seven miles, and concealed their bodies in a thicket. John Rickard testified on this point: That he, Gus Colburn, and Jim Williamson stayed at the wagon. George Williamson's gun was on the wagon. He got it out, and then he and Jim and Frank Martin went to where Mrs. Crocker was lying. That he heard them talking about her, and heard her say: "Oh, Frank Martin, I know you!" And then they all came back to the wagon, and they said that the woman had to be killed, and there was some talk as to who should kill her. One of the Martin's said to the defendant: "You have done nothing yet; you shoot her." The defendant said: "No, by God, I can't shoot a woman!" The defendant had his gun in his hand. Frank Martin then said: "Well, by God, I'll do it!" The defendant, George Williamson, then said: "Well, here," and handed Frank Martin his gun. Frank Martin took the gun as Williamson handed it to him, and shot Mrs. Crocker in the head. He set her hair on fire, at which the defendant laughed. It was a shotgun that she was shot with. Emmett Colburn testified that the shooting occurred at his house; that, at the time, his family were not at home, and he was there alone; that he tried to prevail on the deceased, Crocker, to leave his house, and endeavored also to prevail on the crowd, who were assaulting him, to leave, and not have their trouble at his house; that his wife and children were a short distance off, at a neighbor's house, and he saw them coming, and he went and told them to go back; that he subsequently went to where Mrs. Crocker was, after he had seen them shoot her down, and she was then living, but badly wounded. We have been particular to collate the testimony upon this point because, to incriminate the appellant, George Williamson, in the death of Mrs. Crocker, he not being present at the beginning of the difficulty, it became necessary for the State to show that she was still living when he arrived, at 2 or 3 o'clock in the morning; and the court presented this view of the case, in the charge to the jury. Confessedly, Gus Colburn and John Rickard were accomplices, and there is some testimony in the case tending to show that Emmett Colburn may have been an accomplice. The court properly submitted the question as to accomplices with reference to all of these witnesses. We have examined the record carefully to ascertain if the evidence in the case would justify or authorize the jury to find that Emmett Colburn was not an accomplice; for, if the evidence establishes this fact as to said witness, then there is no proof, outside of accomplices' evidence, that would establish the fact that Mrs. Crocker was living and was killed after George Williamson came upon the ground. All of the evidence in connection with the witness, Emmett Colburn, shows that he did not participate in the difficulty actively. That he made no effort to prevent it is reasonably accounted for by the testimony in the case; and it occurs to us that the jury was authorized to find that

he was not an accomplice in the killing of these three people; and, entertaining that view, this witness corroborates the other two witnesses as to the fact that Mrs. Crocker was not killed when she was shot down in the prairie by Jim Williamson. He testified that he went to her about 8 or 9 o'clock, and found her lying on the ground, with her head on her arm, and with blood on her side, and he stated that she was, in his opinion, mortally wounded. She spoke to him at the time, and said that Frank Martin had shot her. He left her lying there. We might indulge the presumption that, being then alive, she was not killed until some four or five hours later, as testified by the two accomplices. But, while this view of the case indicates the corroboration of the two accomplices by the witness, Emmett Colburn, yet is there any testimony in this case, outside of the testimony of the two accomplices, Gus Colburn and Rickard, tending to connect the defendant, George Williamson, with the killing of Mrs. Crocker? The evidence of the accomplices is to the effect that she was shot in the body and in the head, and this was corroborated, after her body was found, by others who were not accomplices; and such outside testimony also tends to show that the shot in the head was inflicted with a shotgun, and this testimony would tend to corroborate the accomplices to the effect that she was shot in the head with a shotgun. But is there testimony in this case tending to show that the appellant did that shooting? Or is there any testimony in this case, outside of the accomplices' testimony, tending to show that the appellant, George Williamson, was present at all at the scene of the homicide at any time during that night? The witness, Winzenreed, who was introduced by the State, testified that on the 19th of May he was with the defendant hunting horses in Lavaca County, some fifteen miles distant from the place where the shooting occurred; that they ate supper at one Mr. Powell's, and, after supper, they started home. They got to Williamson's house, which was a mile and a half distant from the scene of the homicide, about 2 o'clock that night; that, when they rode up to Williamson's house, witness heard a commotion in the house, and Mr. Williamson's daughter called to him (the defendant), and he (witness) sat on his horse, and defendant got down, and went into the house. After a little while he came out, and said that his wife was sick, and told him to go on home, and witness then went on to his father's house. This witness also says that at some time during that night, and before they reached the defendant's home, about 2 o'clock, the defendant told him that, if Crocker was killed, for him (witness) not to have a word to say about it, and not to even help bury him. No other witnesses outside of the two accomplices testify to having seen the appellant on that night, so that the only testimony outside of the accomplices' evidence in the case leaves the appellant at his home, a mile and a half from the scene of the homicide, at about 2 o'clock on that night, with his family; and the homicide occurred about 3 o'clock. Can we presume, in the absence of testimony, in order to corroborate the two accomplices, that the appellant, after he was left at his home

by Winzenreed, got his shotgun, and then rode over to the scene of the homicide, and participated in the killing of Mrs. Crocker? He may have done so. He had time to do so. But we have no testimony before us, outside of the accomplices, that he did so; and governed and controlled, as we are, by the rules of evidence, we are constrained by the record in this case to hold that there is not one syllable of testimony, outside of the accomplices' testimony, that places defendant at any time during that night nearer than his home, a mile and a half from where the homicide occurred. Our statute provides that a "conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." See, Code Crim. Proc., 1895, Art. 781. See, Smith v. State, 27 Tex. Crim. App., 196; Chumley v. State, 28 Tex. Crim. App., 87; Dever v. State, ante p. 396. Because, in this case there is no testimony outside of the evidence of the accomplices tending to connect the defendant with the offense charged, the judgment of the lower court is reversed, and the cause remanded.

*Reversed and Remanded.*