## JOHN LITTLETON v. THE STATE.

No. 6460.   Decided March 8, 1922.

1.—Murder—District Court—Transfer of Cases—Change of Venue.

Where, upon trial of murder, it appeared on appeal that the trial was had in the District Court of the Ninety-first Judicial District, in Eastland County, that the indictment was returned into the District Court for the Eighty-eighth Judicial District of Eastland County, and the grand jury were empanelled in the latter court and returned therein an indictment which was duly entered and from there transferred in the absence of defendant, to said Ninety-First District, there was no reversible error. Following Cummings v. State, 37 Texas Crim. Rep., 437, and other cases; as such transfer is not a change of venue. Following Bonding Company v. State, 73 Texas Crim. Rep., 661.

2.—Same—Rule Stated—Presence of Accused—Preliminary Proceedings.

The law requires the presence of the accused at the trial, but does not demand that he be present during proceedings which are merely preliminary to, but which are not a part of the trial. Following Oliver v. State, 70 Texas Crim. Rep., 140, and other cases.

3.—Same—Charge of Court—Words and Phrases—Self-defense—Burden.

Where the defendant objected to the court's charge on Self-defense, because it recited "that he thought his life was in danger" and thereby placing a greater burden on defendant than the law requires, *held:* that the same was untenable; besides the objection was not sufficiently specific. Following Cockrell v. State, 85 Texas Crim. Rep., 332.

4.—Same—Charge of Court—Bill of Exceptions—Reasonable doubt.

Where, upon trial of murder, objection to the court's charge on self-defense, because it advised the jury that if they found the defendant guilty of some offense, but had a reasonable doubt whether it was murder or manslaughter, they would apply the doubt in favor of the defendant, there was

no reversible error. Besides, the point is not raised by the exception. Following Lagrone v. State, 84 Texas Crim. Rep., 610, and other cases.

### 5.—Same—Evidence—Appearance of Defendant—Shorthand Rendering.

Upon trial of murder there was no error in admitting testimony to the effect that at the time of the homicide the defendant did not appear to be excited. This was a shorthand rendition of the facts. Following Powdrill v. State, 62 Texas Crim. Rep., 442, and other cases.

### 6.—Same—Evidence—Opinion of Witness—Non-expert.

Where, upon trial of murder, the witness in describing the wound on the head of the deceased said: "It was on the left side just in the edge of his hair, above the right eye. It was kind of an oblong one," and in this connection, in the presence of the jury, drew a small sketch indicating the shape of the wound, there was no reversible error. Following Carson v. State, 57 Texas Crim. Rep., 396, and other cases.

### 7.—Same—Evidence—Conversation—Practice in Trial Court.

Where defendant's father testified to conversations with the deceased antecedent to the first marriage of the daughter of the deceased, and also that he conversed with the deceased, and that the deceasd said that he had made false statements against the defendant, etc., and complaint was made of the refusal of the court to receive evidence of further statements made by the deceased; *held*, that the additional facts set out in the bill of exceptions were not of sufficient consequence as to prejudice the defendan_, and there was no reversible error.

### 8.—Same—Evidence—Cross-Examination—Bill of Exceptions.

The bill complaining of the fact that a certain witness on cross-examination by the State testified that she had appeared in appellant's *habeas corpus* proceedings, shows no error, because it reveals no surrounding fact.

### 9.—Same—Evidence—Bill of Exceptions—Harmless Error—Motive.

That defendant was not permitted to testify to facts showing his reason for fearing the deceased, and that he had heard of the deceased choking someone else, and it appeared that he gave substantially the same testimony, there was no error in refusing same; nor, was there any error in excluding evidence that the deceased was a socialist, etc., as defendant claimed that his mind was affected by the conduct of the deceased in seeking to maintain the separation from his wife.

### 10.—Same—Rehearing—Practice on Appeal—Affidavits.

Where, upon motion for rehearing not filed within fifteen days after affirmance, and requesting leave to file same, etc., the affidavits to show reason for delay are not passed upon, but nothing being presented which would change the order of affirmance, the motion is overruled.

Appeal from the District Court of Eastland. Tried below before the Honorable George L. Davenport.

Appeal from a conviction of murder; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*D. G. Hunt*, and *J. R. Stubblefield*, for appellant.—On question of jurisdiction: Taylor v. State, 197 S. W. Rep., 196; Randle v. State, 28 id., 953.

*R. G. Storey*, Assistant Attorney General, for the State.

MORROW, Presiding Judge.—Conviction is for murder; punishment fixed at confinement in the penitentiary for a period of ten years.

The trial was had in the District Court for the Ninety-first judicial District in Eastland County. The indictment was returned into the District Court for the Eighty-eighth Judicial District of Eastland County.

The record before us shows the order impaneling the grand jury in the Eighty-eighth Judicial District; the return therein of the indictment against the appellant in accord with Article 445, Code of Crim. Proc., the entry of its presentation in accord with Article 446, Code of Crim., Proc., and an order of the District Court for the Eighty-eighth Judicial District transferring the cause to the District Court for the Ninety-first Judicial District.

The jurisdiction of the latter court is challenged upon the ground that the order transferring the case was one that could not be made in the absence of the appellant. The order was made in accord with the Act of the Legislature creating the District Court for the Ninety-first Judicial District. See Acts of the 36th Leg., 3rd Called Session, Chap. 33, Sec. 7. The power of the court to make such a transfer has been approved by this court. Cummings v. State, 37 Texas Crim. Rep. 437. Such a transfer is not a change of venue. Bonding Company v. State, 73 Texas Crim. Rep. 661. The law requires the presence of the accused at the trial, but does not demand that he be present during proceedings which are merely preliminary to but which are not a part of the trial. Cyc. of Law & Proc., Vol. 12, p. 526; Pocket v. State, 5 Texas Crim. App. 552; Cordova v. State, 6 Texas Crim. App. 207; Rothschilds v. State, 7 Texas Crim. App. 519; Powers v. State, 23 Texas Crim. App. 42; Oliver v. State, 70 Texas Crim. Rep. 140; Bullock v. State, 73 Texas Crim. Rep., 419, 165 S. W. Rep. 196.

In the case of Rothschilds v. State, supra, the final order changing the venue was made while the appellant was in jail. Dealing with the point raised against the judgment upon that ground, the court said:

"We do not regard the proceedings on an application for a change of venue as any part of the trial, and in support of this position need not invoke any other authority than our own Code of Criminal Procedure, the wisdom and comprehensive character of which stands a fitting monument of the greatness of its original author."

We regard the order in question in the instant case as a matter

preliminary to the trial and not a part of the trial requiring the presence of the appellant. In the elaborate brief of appellant, we have been referred to no authority which to our mind is in conflict with the correctness of this view.

The deceased was the father of appellant's wife. A separation had taken place and she was at the home of her father. Appellant came in the evening to the home of the deceased and sought and obtained an interview with his wife. They conversed with each other in the kitchen for some time. The deceased, his wife, and the witness Sidney Webb, were in the living room adjoining the kitchen, the deceased and Webb being engaged in a game of checkers. The deceased, on one occasion during the interview between the appellant and his wife, walked through the kitchen and got a drink of water and returned to the living room, proceeding with the game. Another daughter of the household, about thirteen years of age, also went in the kitchen for the purpose of washing the dishes.

According to the State's theory and testimony, the witness Webb and the deceased were sitting facing each other with the checkerboard upon their laps; Yancey was sitting with his back to the door between the kitchen and the living-room; Webb heard a part of the conversation between the appellant and his wife in which they discussed some money matters and the division of the property, and the appellant said that he would be satisfied before he left. The appellant approached without any previous warning, save that his wife exclaimed: "Look out, papa." The door flew open. The appellant appeared near the door with a pistol in his hand and exclaimed: "Hands up, Cal Yancey." Yancey whirled around with his hands up, and as he raised himself from the chair, the gun was fired. Three shots were fired, two in immediate succession, resulting in the fall of the deceased. After the fall the third shot was fired by the appellant.

Appellant's version is that at the conclusion of his interview with his wife, she told him that he had better "run on;" that she would see him in town. He was preparing to go out the back door when his wife caught him by the arm and they walked to the door of the living-room, which she opened. Appellant saw the deceased sitting with his back to him and "he jumped up and turned his left side, and when he jumped up, he looked awfully angry." Appellant said:

" 'Cal Yancey, stop,' and at that time went down and got my gun. Yancey had his right hand down to his side and I don't know exactly the position of the other. I was so excited I didn't have time to see what he was doing. There were other movements being made in the house. I thought he was trying to get a gun of some kind, or a weapon. The shots were fired just as fast as I could fire them.  *  *  *  When I shot him, I thought he was going to kill me on account of what my wife had told me.  *  *  *  As soon as he jumped and started on me, the way he looked, it just flashed in my mind that he was after me. He did not stop until the third shot was fired, when he fell."

Appellant also testified that the deceased had made threats against his life; that he had been so told by his wife and others.

Against the court's charge, these objections were urged:

2nd. The charge of the court on self-defense is erroneous in that it requires the defendant to believe that he had a right to act in his own self-defense and places a greater burden on the defendant than is placed on defendant by law.

3rd. The charge of the court is on the weight of the evidence and assumes that the defendant is guilty of some grade of offense.''

From the charge on self-defense, we quote the following:

'' * * * and I charge you in this connection that if you believe from the evidence in this case that the defendant, John Littleton, at the time when the deceased, Cal Yancey, arose from his chair and started toward the defendant, if he did so, that the said deceased, Cal Yancey, from his demeanor, action and appearance, as viewed from the defendant's standpoint at the time, it reasonably appeared to the defendant at the time, viewed from his standpoint and taking into consideration the surrounding circumstances at the time and what had happened prior thereto, *that he thought his life was in danger* or that serious bodily harm was threatening to his person by the deceased, then you are charged that he would be justified in using all force necessary as viewed from his standpoint at the time to protect himself from the unlawful assault or reasonably apparent unlawful assault, if any, even to the extent of taking the life of the deceased, and you believe from the evidence that the defendant at such time did so believe *and you further believe that he thought he was acting in his own right of self-defense* and shot and killed the deceased, you will acquit him and say by your verdict not guilty.''

In his brief, appellant applies the objections mentioned to the words of the charge which we have italicized. We regard the objections as not sufficiently specific to advise the trial court that the complaint of the charge here made was in the mind of appellant's counsel. Maddox v. State, 76 Texas Crim. Rep., 217, 173 S. W. Rep. 1026; Lee v. State, 81 Texas Crim. Rep., 117, 193 S. W. Rep. 313; Young v. State, 78 Texas Crim. Rep., 305, 181 S. W. Rep. 472; Cockrell v. State, 85 Texas Crim. Rep. 332; Walker v. State, 89 Texas Crim. Rep. 84; James v. State, 86 Texas Crim. Rep. 598. The law requires, as a predicate for complaint of the charge, that the appellant, before it is read to the jury, "shall present his objections thereto in writing, distinctly specifying each ground of objection." The objections are not specific, but general in their nature. In our judgment, however, the language complained of, when read in connection with the context, was not in any way calculated to injure the rights of the accused or militate against a fair trial. See Code of Crim. Proc., Art. 743.

We are referred to no authorities supporting the contention made by the appellant that the use of the word "thought" condemns it.

We fail to discern the harmful tendency of the use of the word "thought." Appellant's right of self-defense, if it existed, would have arisen because the acts and conduct of the deceased, as viewed by appellant from his standpoint at the time, raised in his mind a reasonable expectation or fear of death or serious bodily harm. The charge, we think, was not illy adapted to inform the jury of appellant's rights and to fully safeguard them.

In his brief, appellant applies the second objection to the charge, which we have quoted, to that phase which advises the jury in substance that if they found the appellant guilty of some offense but had a reasonable doubt as to whether it was murder or manslaughter, they would apply the doubt in favor of the appellant. We think the point is not raised by the exception, and we are further of the opinion that the paragraph of the charge is not subject to the objection. It applied the principle of law favorable to the apellant, which it ought to have applied, in language in no material sense variant from that which has often been used with the approval of this court. Lagrone v. State, 84 Texas Crim. Rep. 610; Eanes v. State, 10 Texas Crim. App. 422; McCall v. State, 14 Texas Crim. App. 353; Kinney v. State, 65 Texas Crim. Rep., 251, 144 S. W. Rep. 257; Tate v. State, 35 Texas Crim. Rep. 231; Moore v. State, 88 Texas Crim. Rep. 629.

This followed the paragraph of the charge on manslaughter and preceded the charge on self-defense. The charge on self-defense was immediately followed by a charge on the presumption of innocence and reasonable doubt. We are constrained to hold that error is not disclosed by the bill.

The testimony of the witness Webb to the effect that at the time of the homicide the appellant did not appear excited was admissible, we think, under the very well recognized rule permitting the giving of a shorthand rendition of facts. Authorities in point are: Miller v. State, 18 Texas Crim. App. 259; Bennett v. State, 39 Texas Crim. Rep. 639; Powdrill v. State, 62 Texas Crim. Rep. 442; and others listed in Branch's Ann. Tex. Penal Code, Sec. 132. The same is true with reference to the complaint of the statement of the witness Webb that the deceased did not seem nervous or angry.

One of the witnesses, in describing the wound on the head of the deceased said: "It was on the left side just in the edge of the hair, above the right eye. It was kind of an oblong one." In this connection, the witness, in the presence of the jury, drew a small sketch indicating the shape of the wound. The complaint of the evidence is that the witness is not shown to have been an expert. We discern no merit in the bill. There is no semblance of opinion given by the witness. He merely described the wound as he saw it. It is competent for a non-expert witness to give such testimony. Underhill on Crim. Evidence, Sec. 312, p. 544; Smith v. State, 43 Texas Reports, 643; Pilcher v. State, 32 Texas Crim. Rep. 560; Carson v. State, 57 Texas Crim. Rep. 396; Balls v. State, 40 S. W. Rep. 801.

Appellant and his wife were sweethearts when she was quite a young girl. Objections against the marriage were urged by the deceased. She married another, and after the death of her husband, she and appellant were married. There was evidence in the case that before the first marriage of his daughter, the conduct of the deceased toward the appellant was harsh and threatening. It was proved without dispute and conceded by the appellant that the deceased consented to her marriage with appellant, and confessed that he was wrong in his former treatment of him.

. The father of appellant, as a witness for him, testified to conversations with the deceased antecedent to the first marriage of the daughter of the deceased, which took place in the year 1915, and that after the death of her husband, he (the witness), about the first of the year 1917, conversed with the deceased in which conversation the deceased said that he had made false statements against the appellant and had drawn a pistol on him, but that he had asked appellant to forgive him; that this conversation occurred but a few days before the marriage of the appellant with the daughter of the deceased. The witness also testified to another conversation with the deceased in which reference was made to the death of appellant's baby, in which conversation the deceased told him that appellant's wife was in bad health and that he did not want her to become a mother again; that he had rather see her dead, and that he would kill the appellant before he would permit it, and that this was communicated to the appellant.

A bill of exceptions complains of the refusal of the court to receive evidence of further statements made by the deceased which appellant's father offered to relate is found in the record. The statements, in substance, are to the effect that the deceased said that he made his daughter marry Williams, her first husband; that that had ruined her life, and that she had said to him in the presence of the appellant: ''You broke my heart in making me marry Williams.'' In view of the testimony that was given by appellant's father, which coincided with his own, and the undisputed evidence showing that the deceased opposed the marriage of appellant to his daughter before she married Williams; and had abused and threatened appellant at that time but had subsequently recanted, apologized and consented to her subsequent marriage to the appellant, we regard the exclusion of the additional facts set out in the bill not of such consequence as to prejudice the appellant. The appellant, in his testimony, in addition to relating the matters which were testified to by his father, related many declarations by his wife supporting the inference that the deceased was instrumental in bringing about her separation from the appellant and was opposed to their reconciliation.

The bill complaining of the fact that the witness Carrie Neyland, cross-examination by the State, testified that she had appeared in appellant's habeas corpus proceeding shows no error. The bill reveals no surrounding facts.

In one of his bills, appellant complains that he was not permitted to testify to facts showing his reasons for fearing the deceased, and among others, that he had heard of the deceased choking one Woods. It appears from the statement of facts that he gave substantially the same testimony as that excluded. This being true, no harmful error was shown by the bill, nor do we regard the complaint of the refusal of receipt of evidence of the fact that the deceased was a Socialist and believed in the right of abandoning marital relations sound. We discern no relevancy in the political views of the deceased, nor do we comprehend how his belief touching domestic relations was material. The appellant claimed that his mind was affected by the conduct of the deceased in seeking to maintain the separation from his wife and by his hostile conduct and declarations towards him. It was upon these and not the belief or political views of the deceased that he relied for justification or mitigation of the homicide.

The judgment is affirmed.

*Affirmed.*

#### ON REHEARING.

### April 5, 1922.

HAWKINS, Judge.—The motion for rehearing was not filed within the fifteen days required by law, but counsel for appellant presents an application requesting leave to file same after the issuance of the mandate. In support of the application affidavits are presented purporting to assign reasons why the motion was not filed within the required time. We will not discuss or pass upon the sufficiency of the matters set up as excusing the delay. With no disposition in any event to do an injury to appellant, we have examined the motion for rehearing and have been unable to reach the conclusion that any matters are presented which would cause us to arrive at a different result than that announced in our original opinion.

.The motion for rehearing is overruled.

*Overruled.*