# NOVEMBER, 1924.

### TOM DUNN v. THE STATE.

No. 7238.    Delivered Nov. 26, 1924.

Rehearing denied June 26, 1925.

**1.—Aggravated Assault—Communicated Threats—Not Raised.**

Where on a trial of an assault to murder, which resulted in a conviction of an aggravated assault, the court properly refused to charge on the law of communicated threats, there being no evidence, as disclosed by the record, raising such issue.

**2.—Same—Requested Charge—Defense of Another—Properly Refused.**

There being no evidence in this case that appellant, in shooting Charley Harris, acted in the defense of appellant's son, the court properly refused to submit a requested charge on such issue.

**3.—Same—Charge of Court—On Aggravated Assault—Held Correct.**

The court having correctly submitted the law of an aggravated assault in his charge, the several, requested charges presented by appellant presenting different phases on that issue were properly refused by the court.

**4.—Same—Evidence—Acts Res Gestae—Properly Admitted.**

Evidence that appellant after the shooting of Charlie Harris, pursued and shot at Lynn Harris his brother was properly admitted, being part of one continuous transaction, and relevant upon the intent of both appellant and his son, and especially since the latter testified in behalf of appellant to facts exculpating appellant from any malice or premeditation in assaulting Lynn Harris.

**5.—Same—Evidence—Defensive Issue—Properly Rebutted.**

It being presented in evidence by appellant that the assaulted party. Lynn Harris had killed, the brother of appellant, as he claimed accidentally, appellant contending that the killing of his brother was premeditated, and that Harris had invited appellant's brother to go hunting with him, in order to find the occasion to kill him, the court properly permitted the witness Mrs. Nash to testify that it was Sol Dunn, appellant's deceased brother, who had suggested the hunting trip with Lynn Harris, on which he was killed.

**6.—Same—Evidence—Res Gestae—Properly Admitted.**

That appellant, after shooting Lynn Harris and Charlie Harris, pursued Lynn Harris with a pistol, was a part of the *res gestae*, and was properly admitted.

**7.—Same—Charge of Court—Properly Submitted Issues.**

While numerous objections were presented, and many special charges requested and refused, we are of the opinion that when considered as a whole the court's charge adaquately protected the rights of the appellant, and under Art. 743, no error is presented, demanding a reversal of the cause.

Appeal from the District Court of Freestone County. Tried below before the Hon. A. M. Blackmon, Judge.

Appeal from a conviction of an aggravated assault; penalty, six months in the county jail and a fine of $1,000.00.

The opinion states the case.

*Boyd, Bell & Smith, Calicutt & Johnson,* for appellant.

*James Kimball,* District Attorney; *Williford & Geppert; Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The conviction is for aggravated assault; punishment fixed at confinement in the county jail for a period of six months and a fine of one thousand dollars.

In the town of Wortham, the appellant and his son, Jim Dunn, took part in an affray in which Lynn Harris and Charlie Harris received gunshot wounds. Some two months antecedent to the

occurrence, Sol Dunn, a brother of the appellant, was killed by a shot fired from a gun in the hands of Lynn Harris. Harris claimed that the shooting was accidental, but the appellant believed that it was intentional and was endeavoring to bring about an indictment.

The testimony of several eyewitnesses, which is in substantial accord with that of Lynn and Charlie Harris, is in substance this: Lynn and Charlie Harris were in front of a garage into which the appellant and his son entered. Upon their emerging therefrom the shooting of both Lynn and Charlie Harris took place. At the time they entered the garage Lynn Harris was sitting in a truck and Charlie was standing by an automobile. When they emerged, Lynn Harris was standing by the truck and Charlie was sitting down in the seat of the car. Lynn Harris, according to his testimony, did not see the appellant until he heard him say: "Harris, here is your chance; here is where I've got you", and immediately fired, striking Harris in the neck. He staggered into the street and fell. Appellant continued firing and two additional shots took effect upon Lynn Harris when he regained his feet and fled. He had brought his pistol with him but had left it in the garage. Charlie Harris claimed that when he saw that his brother had been shot, he jumped out of the car and started towards him when he was fired upon by both the appellant and his son. One of the shots took effect and blinded him for a moment, and upon regaining his sight his brother had gone.

According to Jim Dunn's testimony, he and his father went to town on business. Prior to the occurrence, the two Harris brothers drove through the town in a car, but Jim Dunn did not know that they had stopped at the Quick-Service Garage. He was not aware of the fact that his father had a pistol as he was not accustomed to carrying one. After seeing the Harris brothers, the witness told his father that they were in town and he and his father, at the invitation of the witness, went to the garage without knowledge that the Harris brothers were there. They passed within six feet of Charlie Harris and within fifteen feet of Lynn Harris and entered the garage through the west door. After transacting their business in the garage they started home. The father said: "Let's go home." The witness replied: "I'll be there in a minute." The witness did not see the first shot and did not know who was doing the shooting. Upon reaching the door, he saw Lynn Harris going around the corner. He looked back at the west door (as he thought that was where the shot came from) when he saw Charlie Harris coming out of the car and coming towards the appellant and when he had reached a point about fifteen feet from the appellant the witness said: "Stop," and fired his pistol. His father fired some shots after that time and also fired one about that time. The witness fired two shots at

Charlie Harris. It appeared to the witness that Charlie Harris was going in the direction of his father. The witness said that he did not see Lynn Harris and did not see him lying on the street; that he was not looking at who his father was trying to kill; that he did not know where the shots were coming from.

According to the appellant's testimony, he had not seen Lynn Harris prior to going into the garage, but saw him as he and Jim Dunn entered the garage. No conversation took place though the appellant spoke and received no response. He noticed as he entered the garage that Lynn Harris frowned and gritted his teeth. He left through the east door in order to avoid the Harris brothers, and did not know that they had changed their position, but as he started to leave, one of them was in front of each door. The appellant jerked his pistol and commenced shooting. Lynn Harris gritted his teeth and the appellant saw his hand move but did not wait to see what he was going to do. Lynn Harris was facing the appellant at the time the first shot was fired. He was not aware of the presence of Charlie Harris until he heard a gun fire behind him. He did not know who fired it. He heard some one come up behind him but did not know who it was; that he did not know it was his son, Jim Dunn. He then saw Charlie Harris, almost in a run, coming at him, and he thought he was going to make an attack to help his brother. The witness then fired at Charlie Harris, who whirled around and ran. As he did so, the appellant fired again.

The court, after defining the offenses of murder and manslaughter and instructing the jury upon the elements of assault with intent to murder, gave, in paragraph nine, a charge on aggravated assault based upon the predicate that the mind of the appellant was rendered incapable of cool reflection by an adequate cause.

In paragraph 10 the jury was given an instruction upon the elements of justifiable homicide and was told in substance that the right of the accused to protect himself from death or serious bodily harm at the hands of Charlie Harris was based upon real or apparent danger as viewed from the appellant's standpoint.

In applying the law of self-defense, the court, in paragraph 11, used this language:

"Now, applying the law of self-defense to this case, you are in-structed that although you may believe from the evidence that the defendant, Tom Dunn, shot the said Charlie Harris, as alleged, yet if you also believe that at the time of doing so, the defendant believed that the said Charlie Harris had made, was making or was about to make an attack or assault upon him, which from defendant's standpoint at the time, and whatever, if anything, may have occurred caused the said Tom Dunn to have a reasonable apprehension or fear of death or of serious bodily injury to himself at the hands

of the said Charlie Harris, and so believing, the defendant shot the said Charlie Harris, or if you have a reasonable doubt as to this, then in such event you will find the defendant not guilty, unless you find the defendant guilty of some offense, under the instructions here-in-after following.''

In paragraph 12 the court qualified the right of self-defense. The charge embraces the abstract statement that the law imputes to one the consequences of his own wrongful act, using language which was used in the case of Reed v. State, 11 Texas Crim. App. 517, and which is quoted in Carlile's case, 96 Texas Crim. Rep. 41. In addition to this general abstract statement, there is embraced the statement in substance that if the jury believed. that at the time of or im-mediately preceding the firing of the shot at Charlie Harris the ap-pellant made or was making an assault to murder Lynn Harris, and that incident thereto he found it necessary, in his own protection, to shoot Charlie Harris, his offense would be an assault with intent to murder.

There was also embraced in the charge an instruction that if the appellant was attacked, or viewed from his standpoint he believed that he was about to be attacked by Charlie Harris and that this occurred at a time when the appellant was in the act of committing an unlawful assault upon Lynn Harris and was at the time under the influence of passion rendering his mind incapable of cool reflection, his offense would be aggravated assault. Following these propositions, the court, in the same charge, embraced this language:

''If you believe from the evidence in this case that the defendant, Tom Dunn, begun and engaged in shooting at Lynn Harris, if he did, in order to protect himself from an unlawful attack upon him by the said Lynn Harris, real, apparent, or threatened, or that just prior to his shooting at Lynn Harris, the said Lynn Harris, by some act then done caused the defendant, Tom Dunn, to believe, and he did believe, that the said Lynn Harris was then and there about to make an assault upon him, and so believing the defendant, Tom Dunn, shot at the said Lynn Harris to protect himself; and you further believe that while so engaged in the shooting or affray with Lynn Harris, you find and believe the said Charlie Harris did some act or made some demonstration that caused the defendant to believe, and defendant did believe, that the said Charlie Harris was then making or about to make an attack or an assault upon him, and from anything that may have happened caused the defendant to have a reasonable apprehension or fear of death, or serious bodily injury to himself at the hands of the said Charlie Harris, and so believing he shot the said Charlie Harris, then in such event you will find the defendant not guilty.''

Many objections are leveled at this paragraph of the charge, but in our judgment, none of them are tenable. It would have been

appropriate for the court, in the immediate connection with this charge, to have coupled the law of reasonable doubt, but no criticism of the charge is made upon that ground in the exceptions urged against it.

If Lynn Harris was about to be murdered by the appellant, he would not have had a right to shoot Charlie Harris for endeavoring to protect his brother. Guffee v. State, 8 Texas Crim. App. 187.

The jury was instructed specifically that they were not to convict the appellant for shooting Lynn Harris and that the testimony upon that subject was restricted to its bearing, if any, upon the appellant's conduct in shooting at Charlie Harris. The court instucted that there could be no conviction unless they were satisfied as to the guilt of the appellant beyond a reasonable doubt, and used this language: "This reasonable doubt extends to every phase of the case." If the appellant wrongfully shot at Lynn Harris under the influence of a sudden passion induced by adequate cause, he would not be free from guilt, but the grade of the offense would be modified, and if his attack upon Lynn Harris was justified upon the theory of self-defense, then he would have been likewise justified in protecting himself from the injury of a threatened assault by Charlie Harris. We understand that the court so instructed the jury in paragraph 12 of the charge as well as in the other paragraphs mentioned. In restricting or qaulifying the right of self-defense, it occurs to us that the trial court was warranted by the law of imperfect self-defense. See Branch's Crim. Law, Sec. 463; Peters v. State, 23 Texas Crim. App. 684; Carlile v. State, 96 Texas Crim. Rep. 41, and cases there collated.

Appellant excepted to the charge of the court and presented a special charge, which was refused, in which he claimed that the charge of the court was incomplete in failing to embrace the law of threats with reference to the assault, made by the appellant upon Lynn Harris and in failing to apply the law to the facts and evidence as bearing upon the shooting of Lynn Harris by the appellant. The position taken by the appellant is that since his right to defend against a threatened attack upon him by Charlie Harris was made to depend in part upon the fact that he was right or acted lawfully in attacking and shooting Lynn Harris, that his rights were not protected in the absence of an instruction to the jury by which they might be informed of the appellant's right to act upon the appearance of danger or upon the act of Lynn Harris indicating his intention to execute a threat previously made and communicated to the appellant.

The instructions given the jury were so framed that they were called upon to determine whether in shooting at Lynn Harris at the beginning of the affray the appellant's act was lawful or unlawful.

In the charge quoted the court undertook to tell the jury the circumstances under which it would be lawful. If evidence of communicated threats was before the jury, it was necessary that they know its bearing upon the appellant's rights in order to be fully advised with reference to whether his act in shooting at Lynn Harris was lawful or unlawful. The statute, Art. 1143, C. C. P., defines the law, which is in substance that such evidence of threats would not justify the assault unless by some act then done Lynn Harris manifested an intention, as viewed from the appellant's standpoint, to execute the threat.

The difficulty in which this court finds itself is to determine whether there is in the record evidence of communicated threats. As we understand the facts, the brother of the appellant had been killed by a shot from a gun in the hands of Lynn Harris. No indictment had been found, Harris claiming that the shooting was accidental. The appellant regarded the homicide as intentional and was endeavoring to bring about an indictment of Lynn Harris. He and two other persons had gone to Lynn Harris to obtain the gun with which Sol Dunn was killed. As we understand it, the testimony relied upon to establish the threats is this: Appellant had been told by the witness York that Lynn Harris had said that when he was approached by the appellant and others who obtained the gun from him, he threw his automatic off safety and thought of getting between his horses and opening fire, but as there were three in the party he did not do so. Appellant had heard that Lynn Harris had gone armed since that time and that he had stated to another party that he put his gun off safety on Sunday before the shooting on Monday. Appellant had also been told by Bob Dunn to watch the Harris brothers and and to keep his eyes open as he had heard that Lynn Harris was "kind of worked up" about the appellant having the gun with which Sol Dunn had been killed. On the day before the shooting Mr. Butler told the appellant that he had learned from Sheriff Mayo that he (Mayo) had traded to Lynn Harris a house and lot for fifty acres of land and that Harris had put out the report that he had sold his land for cash; that in answer to Mayo's inquiry as to the reason for this report, Harris said: "I have a reason; I thought I might kill a man."

To our minds the record is void of evidence from which the jury might have found that any threat to take the appellant's life was made by Lynn Harris or communicated to the appellant. The evidence to which we have adverted was properly received as indicating the state of mind of the appellant, as well as the state of mind of Lynn Harris, and as bearing upon the issue of self-defense; but it is not regarded as raising an issue requiring a charge on the law of threats.

After instructing on the law of assault with intent to murder, the court, in paragraph 7, told the jury that if they believed beyond a

reasonable doubt that the appellant was guilty of some grade of assault, they should give him the benefit of any reasonable doubt which they entertained between the offense of assault to murder and some lower grade of assault.

After defining manslaughter and submitting the issue of aggravated assault to the jury, the court, in paragraph 9, of which complaint is made, followed the procedure approved in the case of Pitts v. State, 29 Texas Crim. App. 374; also in Moore v. State, 88 Texas Crim. Rep. 630; Littleton v. State, 91 Texas Crim. Rep. 210; Alley v. State, 241 S. W. Rep. 1025.

We fail to perceive in the record any evidence which would demand that the court instruct the jury upon the right to defend the life of the appellant's son.

Several of the charges requesting the submission of the issue of aggravated assault it is deemed unnecessary to discuss for the reason that this issue was embodied in the court's charge and the jury acquitted the appellant of the assault with intent to murder.

We think there was no error in receiving and in refusing to exclude the testimony to the effect that after the shooting of Charlie Harris, the appellant pursued Lynn Harris. In our judgment, it was a part of the res gestae and was relevant upon the intent of both the appellant and his son, especially since the latter testified, as a witness in behalf of the appellant, to facts tending to exculpate the appellant from any malice or premeditation in assaulting Lynn Harris.

Appellant presented the theory that Lynn Harris had solicited or induced Sol Dunn to go hunting and had intentionally killed him. In view of the evidence by the appellant presenting the theory and contention that the shooting of Sol Dunn by Lynn Harris was premeditated, the court was not in error in receiving the testimony of Mrs. Nash to the effect that it was Sol Dunn who suggested the hunting trip with Lynn Harris.

The testimony of Mrs. Yoe going to show that after shooting Lynn Harris and Charlie Harris, appellant pursued Lynn Harris with a pistol in his hand was, we think, properly received.

The statement of facts is unusually long; the bills of exception are numerous. We have carefully read the evidence, examined the bills, and have reviewed the charge of the court. Space forbids a full recital of the evidence or a discussion in detail of all the complaints of the action of the trial court reflecting by the bills of exception. Considered as a whole, we are of the opinion that the court's charge adequately protected the rights of the appellant and gave to the jury accurate instruction for their guidance in solving the issues raised by the evidence, and is not amenable to any of the objections urged against it.

101 Tex. Crim.—8.

Our examination of the record leads us to the conclusion that the proper disposition of the case is to order an affirmance of the judgment of the court below. This is accordingly done.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In his motion for rehearing appellant reasserts that certain instructions given by the court were incomplete and erroneous, and that error was also committed in refusing certain requested special charges. The record is voluminous both upon the facts, and by the great number of bills of exception, most of which relate to instructions given or refused. We have again examined these matters which appeared to us most important. They were all considered and discussed in our former opinion. It would be interesting to review them further in the light of the motion, but believing proper disposition has been made of the case we deem it unnecessary. We believe nothing is contained in the instructions given, nor in those refused, which was calculated to injure the rights of appellant, and the record fails to reveal that he has not had a fair and impartial trial. Having reached this conclusion, Article 743 Code Criminal Procedure forbids a reversal of the judgment.

The motion for rehearing is overruled.

*Overruled.*