## J. W. Whittle v. The State.

### No. 2428.  Decided February 19, 1902.

**1.—Motion to Quash Array of Jurors Because of Disqualification of Commissioner Who Drew the Jury—Construction of Statute.**

While article 3145, Revised Civil Statutes, provides as to the qualifications of jury commissioners that "they shall have no suit in court which requires' the intervention of a jury;" and "that they should be residents of different portions of the county," still, this statute must be construed on a motion to quash the array of the jury based upon these grounds, with the statutes in pari. materia (Articles 661 and 662, Code of Criminal Procedure); it being prescribed by the latter article, that a challenge to the array of the jury is not permitted where the jury have been selected by jury commissioners. It was no error to overrule the motion to quash; especially where no possible injury to defendant could ensue solely from the fact that a commissioner was interested in a pending civil suit.

**2.—Objection to Admissibility of Evidence—Practice on Appeal.**

Objections to admitted evidence that it was irrelevant, immaterial, and prejudicial, are too general to present the question for review on appeal.

**3.—Forgery—Evidence.**

On a trial for the forgery of the name of a woman alleged to be married to defendant, it was competent and admissible to show that subsequent to his alleged marriage to said woman defendant introduced another woman to the witness as his wife.

**4.—Same—Comparison of Handwriting.**

On a trial for forgery, it was proper to exclude evidence to the effect that the alleged forged signature did not compare with a genuine signature to a deed, where the profert of the deed was not made for the comparison.

**5.—Same—Prosecutrix Writing Her Name in Presence of Jury.**

On a trial for forgery, it was error to permit the prosecutrix to write her name in presence of the jury and allow the same to be compared by them with the alleged forged signature.

Appeal from the District Court of Hill.  Tried below before Hon. William Poindexter.

Appeal from a conviction of forgery; penalty, seven years imprisonment in the penitentiary.

The gravamen of the offense, as shown by the allegations in the indictment, was that one Dollie Trimble had reserved a vendor's lien note for $87.50 upon a tract of land sold by her to one M. R. Gower, and that appellant fraudulently indorsed the said vendor's lien note with the forged name of Dollie Trimble for the purpose of negotiating said note.

The following summary of the important facts in the case is taken from the brief of appellant, viz:  Just previous to the alleged forgery, one Dollie Trimble, a female, was the owner of four certain vendor lien notes for $87.50.  Appellant and said Dollie Trimble were friends, and each resided in Hubbard City, Hill County, Texas.  They were engaged to be married.  They boarded a train at Hubbard City for Waco, Texas, where, upon arrival, they were married at night.  The State contends that the marriage was clandestine and a fraud and a deception practiced by appellant on the said Dollie Trimble, without her knowledge of the deceit and fraud.  A few days before the marriage, said Dollie Trimble

let appellant have $125 without note, interest, security, or any time of payment. The record shows they were married, if not according to the statutory mode, at least the marriage is valid as a common law marriage. They lived and slept together for a few days and nights at Waco immediately after the alleged marriage, and while at Waco, after the marriage, the said Dollie telephoned Banker Allen from Waco, at Hubbard City, to let appellant have these four notes, which she had previously deposited in said Allen's bank. And upon this telephone message the said Banker Allen turned said notes over to appellant upon calling for them. The said Dollie admitted telephoning to the said Allen to turn the notes over to appellant, but for the purpose, as she declares, of depositing same in another bank at Hubbard City. The following indorsement was made upon the back of the notes: "Pay to J. W. Whittle or order. Dollie Trimble." "Pay to B. Cunningham or order, without recourse on me. J. W. Whittle." The witness Dollie Trimble said she did not make the indorsement nor sign her name thereto, and that same was a forgery on the part of appellant. There is no dispute that, after the supposed marriage, appellant and said Dollie lived together as husband and wife for a few days and nights at Waco, and she voluntarily left Waco for the Indian Territory some time in December, 1900, and after she had been in the Territory for about three months, appellant came to her in the Territory, and they slept and cohabited together as husband and wife. This was the last time they ever, in fact, lived and cohabited together, although the records show that said Dollie had made repeated efforts to get with appellant. The contention of appellant is that they were husband and wife, as shown by the records, and that the aforesaid indorsement bearing the signature of Dollie Trimble was indorsed and made by her, as shown by the fact of her order by telephone to Banker Allen to turn said notes over to appellant, and the record testimony of the witnesses Frisby, Barbara Cunningham and others. And the defense was interposed that they, being husband and wife, if appellant did in fact make the indorsement, it would be no violation of the penal statute, because the husband had control of his wife's separate property; and the evidence, showing as it does that Dollie Trimble not only had the notes turned over to appellant, but the evidence showed also that she gave appellant authority to dispose of said notes, which carried with it the right to make the indorsement by appellant, if in fact he did so, on the back of said notes.

In addition to the above statement, the testimony of Dollie Trimble, as to her marriage to Whittle in Waco, was as follows: "The reason Mr. Whittle and myself went to Waco was because we wanted,—we went there to get married. Mr. Whittle said he would go to the courthouse and get the license, and come back and we would go to the Methodist minister and get married. We had made up our minds to get married. I thought we were married. Mr. Whittle went to the courthouse and came back in a buggy and said he had the license, but had some trouble in getting them, for the clerk made him swear that I was over 18; and

then we went on to a supposed minister to get married. A man came and went through the ceremony, as any other man would, I suppose, but it was very short,—shorter than I had ever heard. We stayed together in town all that night. Mr. Whittle came back to Hubbard City, I believe, the next day. You can't prove it by me, for I don't know where we stayed that night. I guess at a hotel; we slept together that night. The next day Mr. Whittle went back to Hubbard City. After getting the marriage license Whittle came back and said he was going to take me to the Methodist minister; drove straight up the street a piece and we drove round and round, finally landing at a dark, gloomy place, and Whittle said a minister lived there; the place looked more like a store than a residence. We stopped twenty or thirty feet from that house. There was a light where I was. Whittle went into the house, then came back part of the way and stopped on the sidewalk and talked about five minutes; and then Whittle came to the buggy and the minister was about twenty feet from me, and Mr. Whittle was between me and him. He was a shabby-looking man with his overcoat buttoned up around his throat, and his hat pulled down over his eyes. Whittle got into the buggy and took me by the hand. The minister was on the sidewalk, two or three feet away, on the right side, same being the side Whittle was on. He went through the ceremony just like any other man. He said he joined us together as man and wife. He asked Whittle if he would take me for his legal wedded wife, and asked me about the same question. We both answered we would. This fellow called my name, Miss Trimble. Whittle and myself drove off and left this man standing; he never looked me in the face. We went from there to a boarding house, a long way off. We got there about 10 o'clock and went to our room, and Whittle carried the buggy back to the livery stable."

It was proved by the county clerk of McLennan that no marriage license had ever issued from his office for the marriage of J. W. Whittle to Miss Dollie Trimble.

J. A. Stevens, for the State, testified: "I live in Hill County; know J. W. Whittle. I was in New Orleans between the 5th and 10th of March last. Saw Whittle there at that time; met him at several places out at the fair grounds. We went to the United States Treasury Department together. He introduced a tall blond lady to me as his wife. I saw him give her money to go and get her meals with. This woman was not Miss Dollie Trimble."

Beaton Miller testified for the State: "I know J. W. Whittle; first knew him in Corsicana; was present when he was arrested. Nish Hammon arrested him. Whittle was stopping at a place with a woman, and just after he was arrested he said he wanted to go by the boarding house and see his wife. The woman was a tall blond. She is Miss Laura Ixell."

Defendant objected to the court's permitting the prosecutrix, Miss Dollie Trimble, at the request of her counsel, writing her name three or four times on a piece of paper and introducing the same in evidence.

*Johnson & Stollenwerk,* for appellant.—The court erred in refusing to set aside the jury, for the reason that Tom Bell, one of the jury commissioners, had in court civil suits pending against him requiring the intervention of a jury. 2 Batts' Civ. Stats., sec. 3145; White's Ann. Code Crim. Proc., art. 372.

The court erred in admitting, over the objection of the defendant, the introduction of the note in evidence, because the indictment in the first place set out the note in full, and alleged the same to be an indorsement on the note, and in the latter part of the same indictment alleged the indorsement of the name of Dollie Trimble on the note to be the indorsement, which is a variance, and the same is vague, indefinite, and uncertain, and does not put this defendant on notice as to what he has to defend against in this case, and there is no allegation in said indictment for the admission of said note in evidence.

The bill of indictment alleges the indorsement on the back of the note to be verbatim the face of the note, which is shown by the note introduced in evidence, is entirely a different indorsement, the indorsement being, "Pay to J. W. Whittle or order. Dollie Trimble." The matters alleged in the indictment and the proof offered are at variance. Warrington v. State, 1 Texas Crim. App., 173; Roberts v. State, 2 Texas Crim. App., 4; Baker v. State, 14 Texas Crim. App., 332; Westbrook v. State, 23 Texas Crim. App., 401; Thomas v. State, 18 Texas Crim. App., 213.

The court erred in admitting the testimony, over the objection of defendant, of J. A. Stevens, wherein he stated that he met the defendant in the city of New Orleans subsequent to his marriage with Dollie Trimble, and that the defendant introduced a woman to the witness as his wife, because the same presents an immaterial issue and has a tendency to prejudice the jury.

If appellant was in fact married to Dollie Trimble, or the acts and conduct of herself with appellant constituted in law a marriage, the further fact that appellant may have subsequently taken up with or married another woman and called her his wife, would be an immaterial issue in this case, for the same could not relate back to the first marriage and in any way be connected with the transaction involved in this prosecution, and said testimony should not have been introduced in evidence in this case, because it operated as a prejudice against appellant and had a tendency to divert the minds of the jury from the true issue in controversy. Shamberg v. State, 24 Texas Crim. App., 433; Green v. State, 12 Texas Crim. App., 51; Fore v. State, 5 Texas Crim. App., 251.

The court erred, in the admission of the testimony of Dollie Trimble, in permitting the said Dollie to write her name upon paper during the progress of the suit, in the presence of the jury, and introducing same in evidence, as compared with her signature indorsed on the back of the note, because the same was done long after the signature was written on the back of the note in question, and the said Dollie Trimble was the prosecuting witness, hostile to the defendant, and could have easily dis-

guised and dissembled her handwriting; that the same, was written on the banister of the bar, on a book, and written under different circum-stances and conditions, with a stub pen, when the signature on the back of the note appeared to have been with a sharp-pointed pen, and that the manner of proving her handwriting in this manner was illegal. Haynie v. State, 2 Texas Crim. App., 168; Thomas v. State, 18 Texas Crim. App., 213; McGlasson v. State, 37 Texas Crim. Rep., 620; 40 S. W. Rep., 503; White's Ann. Code Crim. Proc., sec. 1045, p. 652.

*J. S. Callicutt* and *Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of forgery, and his punishment assessed at confinement in the penitentiary for a term of seven years.

Appellant moved to quash the array of jurors on the ground that one of the commissioners who drew the jury for that term of court was in-terested in three certain civil suits, being a party thereto; said suits requiring the intervention of a jury, and being on the jury docket; and, further, that said jury commissioners were not residents of different por-tions of the county. A reference to article 3145, Revised Civil Statutes, which prescribes the qualification of jury commissioners, requires, among other things, that they should be residents of different portions of the county, and that they shall have no suit in said court which requires the intervention of a jury. If the expression "shall be," in connection with the qualification of jury commissioners, is given a mandatory meaning, then a jury drawn by commissioners not possessing such qualifications would not be a legal jury, and the verdict rendered by such a body would not be a legal verdict. For instance, if one or more jury commissioners should be impaneled to select a jury who are not intelligent citizens, and unable to read and write, and not qualified jurors and freeholders of the county, are not residents of different portions of the county, or one or more of them happen to have a suit on the jury docket, then it would follow that all of the verdicts rendered by a jury so drawn could be vitiated. It has been held in a number of cases, where the language was equally as strong, prescribing the qualification of jurors,—for instance, that the juror shall be a freeholder,—this could not avail a defendant after verdict on motion for new trial. He must in such case go further, and show that probable injury resulted to him. Leeper v. State, 29 Texas Crim. App., 63; Williamson v. State, 36 Texas Crim. Rep., 225; Mays v. State, 36 Texas Crim. Rep., 437. It has also been held that it was too late after verdict to raise the question, where a juror was not a citizen of the State twelve months prior to his service. Trueblood v. State, 1 Texas Crim. App., 650; Sutton v. State, 31 Texas Crim. Rep., 297. These cases, however, only establish that the objection comes too late after verdict. In this case the objection was made to the jury on their impanelment, so that we are squarely confronted

with the question whether or not the refusal of the court to enter-
tain the motion at the earliest moment when it could be made was
error. If we so hold, unless each of the commissioners shall possess all
of the qualifications prescribed, then in every case in which a jury is ten-
dered, drawn by said commissioners, the jury list should be set aside, be-
cause the language in reference to each clause prescribing the qualifica-
tions of commissioners is equally mandatory; and because two of the
commissioners should be residents of the same portion of the county
would equally disqualify the jury drawn, as if it should turn out that
they should not be qualified jurors and freeholders of the county. In
order to impose this test, it is said that the rule that injury must be
shown before a party can avail himself of the objections to the commis-
sioners would be impossible; that the law having prescribed the ma-
chinery for the selection of the jury, he has suffered a legal injury, though
it may not be possible to show any actual injury. It occurs to us if,
because the machinery provided for the selection of jury commissioners
has not been strictly followed, a jury drawn by them should be set aside
on the ground that legal injury will be presumed, would be productive of
such confusion as to produce a public hardship, which ought not to be
brought about except upon the strongest reasons. Evidently the law-
makers had this in view when they provided for the character of chal-
lenge to the array. Article 660, Code of Criminal Procedure, provides
for a challenge to the array on the part of the State; and article 661
provides for a challenge on the part of defendant, to the effect that the
officer summoning the jury has acted corruptly, and has willfully sum-
moned persons upon the jury known to be prejudiced against defendant,
with the view to cause him to be convicted. Article 662 provides that the
two preceding articles do not apply when the jurors summoned are those
who have been selected by jury commissioners. In such case no challenge
to the array is allowed. Now, the challenge to the jurors in this case,
though presented as a motion to quash, was simply a challenge to the
array; and if article 662 means anything, it means what it says: that
is, a challenge to the array can not be made to a jury selected by
jury commissioners. See authorities cited in White's Ann. Code
Crim. Proc., under art. 662. So that this article of the procedure,
in connection with the articles prescribing the qualifications of the
jury commissioners, must be construed in pari materia; in other
words, the article of our code places a limitation on challenges to the
array, and prescribes that it shall not be done where the jury have been
selected by jury commissioners. And the former articles further sug-
gest that the challenge to the array can only be made when prejudice is
shown. Even if we apply this test, what prejudice is shown where one
of the commissioners is interested in some civil suit not connected at all
with the prosecution in this case. We are not now discussing a case
where the jury commissioners are shown to have acted corruptly in the
particular case in drawing a list of jurors to secure the conviction of
defendant. It has been held that other causes may exist for the quashal

of the array outside of the statute; but in all such cases violation of some constitutional guaranty or some injury must be shown. Carter v. State, 39 Texas Crim. Rep., 352; Williams v. State, 20 Texas Crim. App., 359. We hold that the court did not err in refusing to entertain the motion.

We do not think the court committed any error in refusing to quash the indictment on the ground that there is any variance between the purport and tenor clauses of the indictment. We do not understand the indictment to allege the forgery of the note, but sets out the note, and then alleges the forgery of the indorsement.

Appellant objected to the introduction of the testimony of Stevens, who testified that sometime about the 5th of March he met defendant and a woman in New Orleans, when defendant introduced said party to him as his wife. This was excepted to on the ground that it was irrelevant, immaterial, and prejudicial, and was subsequent to defendant's marriage with Dollie Trimble. The first grounds of objection have been held not to present the question of the admissibility of testimony sufficiently for review. Hamblin v. State, 41 Texas Crim. Rep., 135. The fact that the introduction took place subsequent to his marriage with Dollie Trimble, or his alleged marriage, would not suggest that this testimony was not competent. The State claimed throughout that the marriage with Dollie Trimble was a fraud, and did not constitute a legal marriage, so that the evidence regarding appellant's marriage to another woman was competent on this issue. Appellant proposed to prove by Lee Frisby that the signature of Dollie Trimble to the indorsement on said instrument did not compare with the signature on a deed which she had executed. The court excluded this testimony, because profert of the deed was not made for comparison. In this there was no error.

In bill of exceptions number 6 appellant brings in review the admissibility of certain evidence introduced before the jury for the comparison of signatures. The bill is substantially as follows: The State had the witness Dollie Trimble to write her name on a blank piece of paper three times before the court and jury; and offered her signature, in connection with the signature upon the note, in evidence before the jury, thereby securing a comparison of the signature as written upon the note and as written upon the blank piece of paper, which was offered as evidence in this case. To which defendant excepted upon the ground that the same had been written long after the signature was written upon the back of the note and under different circumstances, and was written with a stub pen, when the signature on the back of the note appeared to have been with a sharp-pointed pen; and that the manner of proving the handwriting of Dillie Trimble, in the way it was done, was illegal; and for the further reason that the signature made by her in the courtroom in the way and manner aforesaid should not have been introduced, for she being the main witness and the alleged injured party, she could therefore, on account of her hostility to defendant, disguise her handwriting and dissemble the same, if she saw proper to do so, and in that way showing the dissimilarity in her signature on the back of said note

and as written upon the blank piece of paper. Which objections the court overruled, and permitted the evidence to go to the jury, and the defendant excepted. In support of his contention that the evidence thus affording the jury a comparison of the handwriting was inadmissible, appellant cites us to McGlasson v. State, 37 Texas Criminal Reports, 620. However, the State insists that said case is not in point and conclusive upon the question, inasmuch as the bill, on its face, does not make it appear that at the time Dollie Trimble wrote her signature she had the indorsement on the back of the note before her. It is true, the bill does not state in so many words that she had said indorsement before her at the time she made the signatures before the jury, and in that respect the cases as presented are not similar. But, it does occur to us, even if it be conceded that she had not seen the indorsement on the note at that time, yet, if she had really signed the indorsement thereon, she would, no doubt, have recalled how she signed the same. She certainly would remember how she made her ordinary signature. And, of course, the opportunity would be afforded her to dissemble and disguise her handwriting,—that is, not write in her ordinary method,—so that the danger of fabrication, upon which the cases seem to be based, would still be present. Evidence of the genuineness or want of genuineness by comparison of handwriting, to go to the jury, does not appear to be encouraged by the authorities, and is only permitted under proper safeguards. Such comparison is permitted between the alleged forged instrument and one offered in evidence, executed before there was any inducement to fabricate, and proved to be genuine; but the authorities hold that it is not competent, as was held in McGlasson's case, to have the witness make her signature before the jury for the purpose of comparing same with the signature on the alleged forged instrument. We see no reason to change the rule laid down in said case, and we believe the bill here presented brings the question squarely under the doctrine laid down in McGlasson's case, and the authorities therein cited. In this particular case appellant's defense appears to have been twofold, to wit: (1) That he executed the indorsement on the instrument himself (though there is no positive proof of this), under authority of the prosecutrix; and (2) that prosecutrix herein executed the indorsement. And the admission of illegal testimony tending to support the evidence of prosecutrix and destroy the theory of appellant, to the effect that the indorsement was made by her, was calculated to injure and impair his rights before the jury.

Appellant objected to the charge as given by the court, particularly with reference to the alleged marriage of the prosecutrix with appellant, as bearing on the issue of appellant's authority to control the notes and transfer the same. We think the charge as given is correct, and was as liberal as appellant could ask, under the circumstances.

For the error indicated, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*