PERRIN COTTER v. THE STATE.

No. 11676.   Delivered May 29, 1929.
Rehearing denied November 13, 1929.
Motion to file second motion for rehearing denied January 15, 1930.

The opinion states the case.

*Everett Bryson* of Texarkana, *J. A. Ward* of Mt. Pleasant, and *J. H. French* of Daingerfield, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

HAWKINS, JUDGE.—Conviction for assault to murder; punishment, two years in the penitentiary.

· About 11:30 P. M., August 7, 1927, Sheriff Carpenter of Camp County, while in the county jail of said county, was shot, the gun used being a shot gun and the shot appeared to be No. 2 shot. The evidence seems ample to support the conclusion that Sampy Parker did the shooting, and that appellant was present aiding and acting together with Parker at the time. The court did not charge on circumstantial evidence, and exception was properly reserved to the charge for this reason. It will be necessary to state part of the testimony in the case, to make plain our reasoning and conclusion upon the matter.

Wilson testified that he was in the jail, sitting in a window from which he could see the street, and that it was a bright moonlight night. He saw a car drive up and slow down from which a man alighted, and the car moved on down the street. He said the man who got out of the car came across the street carrying a gun, and that this man was Sampy Parker, but he did not undertake to identify the man who was driving the car; that Parker looked both ways, up and down the street, then walked out of witness' sight, came back and looked into the jail, and again walked out of witness' sight, and that in a few seconds a gun fired. One Bolden testified in substance the same as did Wilson. He also identified Parker as the man with the gun. One Burrell swore that he had started down a trail by the jail, heard a shot, and, to quote from his testimony:—

"When the gun shot I looked up where I heard the shot and saw two men * * * they were between the jail house and the county barn * * * they were running out toward the west end of the barn * * * they had something that looked like a shot gun in their hands, to me. Those men were Mr. Perrin Cotter (appellant) and Mr. Sampy Parker."

It was shown that not long before the shooting the sheriff arrested Sampy Parker on a misdemeanor charge and that the arrest was re-

sisted, and Parker refused to go up the steps at the jail and was finally hit by the sheriff with his pistol. Thereafter Parker and appellant on many occasions made threats to get even with the sheriff and to kill him in various ways. One King testified that on Monday night after the shooting Sunday night, he met appellant and they talked about the occurrence on their way to Mr. Bryson's office, and as they walked up the steps to Bryson's office appellant said: "We liked to have got the s— of a b— last night." Witness asked him who "we" was and appellant just laughed. Further in King's testimony, referring to this conversation, he said:

"We were going up the steps there by the bank when he said that. I think that was all he said. From the way he talked he knew who did it. Yes, sir, he just said, 'If I had done the shooting I would have shot lower and shot him in the back,' and then as we were going up the steps to Everett's office he said, 'We like to have got the s— of a b— last night.' "

Again speaking of another conversation had with appellant King testified that appellant asked him, witness, why he did not get Hardy Burrell to kill him (evidently meaning Sheriff Carpenter), and said that while all the suspicion was pointing the other way, the negro would never be arrested. In this connection appellant said he had some bigger shot and wouldn't have to get as close as he did before, and undertaking to give appellant's exact language King testified that appellant said: "Well I have bigger shot than we had before, and we wouldn't have to get so close to him."

Admissions and confessions of guilt by the accused may take the case out of the rule of circumstantial evidence. See Branch's Ann. P. C., Sec. 1040, for citation of authorities. Without attempting to reproduce in greater detail the testimony, we are of opinion that appellant's statements referred to, taken together with these facts and others not set out, remove this case from the domain of circumstantial evidence. If there was any doubt on this point, however, there could be none as to the application of the rule of juxtaposition, often upheld by this court. As said in Crews v. State, 34 Tex. Crim. Rep. 543:

"The appellant assigns as error the failure of the court to give a charge on circumstantial evidence. While it is true in this case that no witnesses testify that they saw the act of killing, yet the facts and circumstances of this case are of a character to place defendant in such proximity and juxtaposition to the fact of killing as to render such a charge unnecessary, and besides, the statements of deceased and Mrs. Crews were in the nature of positive evidence."

See also Kidwell v. State, 35 Texas Crim. Rep. 265, a case in which in the darkness appellant and another were together when one of them inflicted the fatal wound, but which one the witness could not tell. We held no charge on circumstantial evidence necessary because the facts so closely related themselves and made so evident the guilt of the accused as to leave no room for any other conclusion.

Appellant's bill of exception number one relates to alleged error in regard to a change of venue. Appellant made application, properly supported by compurgators, for such change on the ground of prejudice and the existence of a dangerous combination against him in Camp County where the prosecution was pending, and requested that the case be sent to Titus County, averring in the application that the court house of that county was nearest to the one in Camp County. The application was not controverted upon any ground permitted by Article 567, C. C. P., and no protest whatever to a change of venue was interposed. However, the state through her district attorney filed a written request that the case be sent to Morris County, representing that while the court house there was four miles farther than the court house of Titus County, yet the condition of the roads to Morris County was much better. It was also suggested that the court in Morris County convened sooner than the one in Titus County which would permit an earlier trial. This latter matter, however, seems unimportant in considering the question before us and will not be further adverted to. After hearing evidence regarding the removal the court ordered the case sent to Morris County, certifying in said order that the court found as a fact that the court house in Titus County was twelve miles from the court house in Camp County and that the court house in Morris County was sixteen miles from the Camp County court house, but that a good and well maintained gravel highway extended from the court house in Camp County to the court house in Morris County, while the highway to Titus County had been newly constructed and in extremely wet weather was impassable which caused travelers to Titus County from Camp County to detour by the way of the county seat of Morris County, and that bad road conditions were more probable to occur during the month of January when the next term of court convened in Titus County; that for this reason, among others, the venue was changed to Morris County. The order also recites that the court changed the venue of his own motion.

It is appellant's position that when his application for change of venue was in proper form and uncontested on any of the grounds recognized by statute he was entitled to removal of his case as a matter of law and that the court had no right to ignore his application and undertake to order a change of venue on his own motion, but was required to act on appellant's application and send the case to Titus County which was nearest. We do not attach great importance to the averment in the application that the court house in Titus County was nearest, although expressions in some of the opinions cited by appellant may convey a contrary idea; namely, Moore v. State, 46 Tex. Crim. Rep. 54, 79 S. W. 565; Wallace v. State, 48 Texas Crim. Rep. 318, 87 S. W. 1041. In the absence of contest it is our understanding that the court was bound by the averments properly supported by compurgators as to prejudice and dangerous combination. We think the statute controls as to the county to which the case should be removed and the court would not be precluded from investigating that matter by reason of a representation in the application as to which was the nearest county. On the other hand, we think the court could not ignore an application for removal, good on its face, in the absence of a contest, and arbitrarily send the case of his own motion to a remote county which might be to appellant's prejudice.

Article 565, C. C. P., provides: "Upon the grant of a change of venue, the cause shall be removed to some adjoining county, the court house of which is nearest to the court house of the county where the prosecution is pending," unless such nearest county is subject to objection, which contingency is absent in the present case. The question is, does the record in the present case show a substantial compliance with the statute, or does it show such disregard of it as demands a reversal? In Coffman v. State, 73 Texas Crim. Rep. 295, by unanimous decision of the court as then constituted it was said that: "The gist of an accused's right to a change (of venue) is that he shall not be tried in a county where from prejudice or combination against him he cannot get a fair and impartial trial." It is further substantially said in that opinion that the portion of the statute directing a removal to the county having the nearest court house (and not subject to objectionable conditions) was designed to serve the convenience of the parties and the witnesses to the litigation. It is further apparent from said opinion that this court should not overlook the changed conditions of travel as to highways, railroads and interurban connections between county

seats in determining the question of removal of cases from one county to another. It is made plain in the present case that while the court house of Morris County is four miles further in distance from the county of removal than is the court house in Titus County, yet by reason of an improved gravel highway it is under ordinary conditions much nearer in point of time required to travel between the given points, and that under bad weather conditions a detour is necessary which requires travelers from Camp County to go through Morris County to reach the county seat of Titus County. Under these circumstances we do not feel called upon to hold that the removal of the case to Morris instead of Titus County would be an error demanding a reversal, even had the court acted upon appellant's application for removal instead of undertaking to remove it on his own motion. There was and is now no contention that any prejudice or dangerous combination existed in Morris County against appellant which prevented him from having a fair and impartial trial.

Under the facts stated in the order for removal the statute relating to that matter appears to have been substantially complied with.

The judgment is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—The case of Williams v. Planters' & Mechanics' National Bank of Houston, 44 S. W. 617, is a decision by the Court of Civil Appeals at Galveston in which a writ of error was denied by the Supreme Court of this state. There was called in question the legality of the order of the District Court of Harris County in granting an application for a change of venue, after the hearing, and transferring it to Galveston County instead of Fort Bend County. The court in its order stated that it appeared that the court house at Galveston County was, "for all practical purposes" the nearest court house to that of Harris County. The use of the words "nearest for all practical purposes" may, we think, be equivalent to "most accessible."

In the case of Shaw v. Cade, 54 Tex. Rep. 307, the Supreme Court had before it the construction of the statute. The basis of the suit occurred in Galveston County. A motion to change the venue was granted, and the venue was changed to Harris County. On the call of the case in Harris County, a motion was

made and sustained, transferring the case to Chambers County, the Harris County District Court acting upon the theory that the order changing the venue to Harris County conferred no jurisdiction upon that court for the reason that the court house in Chambers County was the nearest to that of Galveston County within the meaning of the statute. It had been developed in Galveston County that the distance between the court house at Galveston County and that in Chambers County, by air-line measurement, was forty-two miles, and by the "usually traveled route" was fifty-six miles; that the Harris County court house was distant from the court house of Galveston County, by air-line measurement, fifty miles, and by the "usually traveled route," the same distance —fifty miles. On appeal the Supreme Court determined that the assumption of the District Court of Harris County that it had no jurisdiction was wrong, and that in refusing to try the case and in removing it to Chambers County upon the ground stated it was in error. The Supreme Court, in ordering the reinstatement of the case in the District court of Harris County, said:

"The opinion of the court is that the nearest court house, in the meaning of the statute, is not necessarily the one nearest by geometrical measurement, but may be the one most convenient of access and nearest by the usually traveled route."

The statutes governing the change of venue in the particular in question are alike in both civil and criminal cases. See Rev. Stat., 1925, art. 2172; C. C. P., 1925, art. 565. Disclaiming any attempt, by quotation or otherwise, to put into words the exact meaning of the term "nearest county" as contained in the statutes in question, we are confirmed in our opinion that the statutes are not so rigid as to require a reversal of the judgment upon the facts pertaining to the question in hand upon the present trial. The precedents are numerous to the point that a mistake of the trial judge in exercising his discretion to change the venue does not affect the jurisdiction of the court to which the transfer is made. Such is the holding of the Supreme Court in the cases cited and of this court in the case of Taylor v. State, 197 S. W. 201, and others. That there is some degree of flexibility, that is to say, that the trial court has some discretion in the matter of deciding the place to which the venue should be changed is obviously the holding of the Supreme Court of this state in the cases cited and of this court in the cases cited in the original opinion. The judicial interpretation of the statutes, in view of the subsequent re-

enactment of them in the same language, may be regarded as reflecting the legislative adoption or sanction. See Lewis v. State, 58 Tex. Cr. R. 351, quoting Black on Interpretation of Laws, page 369, thus:

"When the Legislature revises the statutes of the State, after a particular statute has been judicially construed, without changing that statute, it is presumed that the Legislature intended that the same construction should continue to be applied to that statute."

The motion is overruled.

*Overruled.*

OPINION ON APPLICATION TO FILE SECOND MOTION FOR REHEARING.

LATTIMORE, JUDGE.—It is the fixed rule of this court that unless an application for leave to file a second motion for rehearing sets up as ground therefor some matter such as is comprehended by our opinion in Hickman v. State, 93 Texas Crim. Rep. 407, 247 S. W. Rep. 518, such motion will not be granted.

In the opinions of Judge Hawkins originally and Judge Morrow upon rehearing, the questions raised regarding the action of the trial court in his change of the venue herein, and in refusing to charge on circumstantial evidence,—were reviewed and passed upon. Said questions are again raised and presented in this application but we do not follow or agree to any contention made and must decline to further write upon same. Chorn v. State, 107 Texas Crim. Rep. 522; Webb v. State, 109 Texas Crim. Rep. 311; Silver v. State, 110 Texas Crim. Rep. 512; Webb, et al v. State, 110 Texas Crim. Rep. 503. The admonition of Morrow, P. J., in the opinion last cited, is called to the attention of the bar, and it is hoped they will be guided thereby.

We did not discuss appellant's contention that the trial court erred in the admission of the testimony of Sheriff Carpenter set out in bill of exceptions 12, to the effect that he saw the co-defendant Parker coming from the direction of appellant's home the morning after the shooting. That such testimony was inadmissible, is not made evident by the recitals of the bill, nor is there any showing of possible harm. The shooting was in the night. Parker's place of business was in the opposite direction from which he was coming when seen by Mr. Carpenter the next morning. In connection with the facts and circumstances known to the trial court and jury, Parker's movements about 8 o'clock the morning

after the shooting may have supported the theory of an acting together of himself and appellant.

We did not discuss the alleged error of allowing the negro Bolden to testify that he was in jail prior to the shooting when Parker was struck by the sheriff as the latter put Parker in jail, and to a threat made by Parker shortly thereafter. There were two adjoining compartments of the jail, one for whites, the other for negroes, separated by a steel partition. Directly after the officer put Parker in the white compartment, Bolden testified that he heard a threat against the sheriff, and that the party said he would show him how to hit a white man. As far as the recitals of this bill go, they fail to show that Parker was not the only man in the white compartment when the threat was therein made which fact if known to Bolden would have justified him in saying Parker made the threat. The bill shows no error.

The application for leave to file a second motion for rehearing will be denied.

*Denied.*