# ARTHUR L. MILLS v. THE STATE.

No. 15365.   Delivered November 7, 1932.
Rehearing Denied April 12, 1933.
Reported in 59 S. W. (2d) 147.

The opinion states the case.

*Bush & Parten,* of Franklin, and *C. S. Farmer* and *Munroe & Holt,* of Waco, for appellant.

*T. L. Tyson,* County Attorney, of Franklin, *Willard McLaughlin,* Criminal District Attorney, and *Frank M. Wilson,* and *Sam Dardnne,* Asst. Crim. Dist. Attys., of Waco, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is misapplication of public funds; the punishment, confinement in the penitentiary for four years.

The indictment was returned in McLennan county. Upon considering appellant's application for a change of venue, the trial court reached the conclusion that the case should be transferred to Robertson county. It was in the county last mentioned that the trial was had.

The conviction is under article 95, Penal Code, which reads as follows: "If any officer of any county, city or town, or any person employed by such officer, shall fraudulently take, misapply, or convert to his own use any money, property or other thing of value belonging to such county, city or town, that may have come into his custody or possession by virtue of his office or employment, or shall secret the same with intent to take, misapply or convert it to his own use, or shall pay or deliver the same to any person knowing that he is not entitled to re-

ceive it, he shall be confined in the penitentiary not less than two nor more than ten years."

In the indictment it was charged, in substance, that appellant was tax collector of McLennan county, and that, by virtue of his office, there had come into his custody and possession the sum of $44,823.62 in money belonging to McLennan county, which amount he fraudulently took, misapplied, and converted to his own use.

The indictment was returned by the grand jury on the 21st day of March, 1931. The trial was had on the 14th day of January, 1932. Appellants term of office expired December 31st, 1930. On retiring from office, appellant had failed to file his report for the month of December, 1930. In February, 1931, the commissioners' court called upon him for his December report, and he appeared before the court on the 23rd of February with the statement that he was preparing such report. Further he stated that his report would show that he owed the county approximately $44,000 for taxes collected. He asked for time, promising to bring in the report and money due the county on February 25th. On the date last mentioned, appellant appeared before the court with an incomplete report. The time for filing the report and paying over the money due McLennan county having passed, the court insisted that appellant make a settlement. At this time appellant stated to the county judge that he needed more time, and that he thought he could arrange a trade which would enable him to pay over the amount of money he was due the county. In the first part of March, 1932, appellant filed his report for the month of December, 1930, showing that he had collected taxes due McLennan county in the sum of $44,823.62. Other than the sum of $3,802.57, which appellant paid into the county treasury, no part of the amount shown in the report was ever accounted for by appellant.

In making proof that appellant had collected $44,823.62 in taxes for McLennan county, the state introduced in evidence appellant's report for the month of December, 1930, showing that his tax collections amounted to $44,823.62. Also appellant's statement to the commissioners' court to the effect that his report showed that he owed the county approximately $44,-000.00, and the declaration that he did not have the money but could get it if given a little time, were before the jury. Again, the jury had before them proof that appellant declared to a newspaper man that his report would show that he owed the county $44,000, and that a check for that amount would ac-.

company the report. Appellant proved by a state's witness, on cross-examination, that under an agreed judgment the surety company making appellant's bond had paid into the county treasury practically the entire amount of money alleged to have been embezzled. In the same connection it was shown that appellant was not a party to the suit resulting in the agreed judgment, but objected to being made a party. Appellant's counsel elicited from the county treasurer, on cross-examination, the following: "I know from my own personal knowledge that some thousand dollars of this particular money he (appellant) was indicted for taking was in the bank at the time he was indicted. Some of that money was in the depository when he was arrested. I do not know the amount as I did not keep up with that part; it wasn't my business to keep that part."

Appellant did not testify in his own behalf, but contented himself with proving by several witnesses that his general reputation for honesty and fair-dealing and for being peaceable and law-abiding was good.

It is appellant's contention that the proof is insufficient to show that the money alleged to have been embezzled came into his possession; his position being that his report of collections is an extrajudicial confession, without corroboration. If it should be conceded that appellant is correct in his contention that his report is an extrajudicial confession, the opinion is expressed that the facts and circumstances in evidence furnish sufficient corroboration. As heretofore shown, appellant's counsel elicited from the county treasurer that, after appellant had been indicted, there was in the depository several thousand dollars of the money shown in the report to have been collected. We have also noted that appellant proved that the surety company making his bond had paid into the county treasury, under an agreed judgment, approximately the amount alleged to have been embezzled. Whether this proof would have been admissible against appellant if offered by the state it is not necessary to determine. Appellant himself placed it before the jury in an effort to show that the county had lost no money. As the matter stands, it affords a circumstance corroborating the statement in appellant's report as to the amount of tax money he had collected.

The corpus delicti may be established by circumstantial evidence, and in its establishment the extrajudicial confession may be taken in connection with the other facts and circumstances in evidence. Extrajudicial confessions, standing alone, are not sufficient proof of the corpus delicti. It is necessary that there

be such extrinsic corroborative circumstances as will, taken in connection with the confession, produce a conviction of the guilt of the accused beyond a reasonable doubt. It is not required that the suppletory evidence be conclusive in its character. A jury may be warranted in rendering a verdict of guilty where the circumstances related in a confession correspond in some points with those proven to exist. Kugadt v. State, 38 Texas Crim. Rep., 681, 44 S. W., 989; Aven v. State, 253 S. W., 521; Howes v. State, 3 S. W. (2d) 445.

The opinion is expressed that the report is not an extrajudicial confession. The law required appellant to make it in his official capacity. Article 7261, Revised Civil Statutes, 1925. Under the terms of the statute, the tax collector is required, at the end of each month, to make a report, under oath, to the commissioners' court showing each and every item of ad valorem, poll, and occupation taxes collected by him. Article 133, Penal Code, provides a penalty for failure to make the report. A prosecution for perjury can be based on a false report, deliberately made. Appellant cites no case, and we know of none, sustaining his contention. The rule seems to be that a report of the character under consideration is admissible in the courts as prima facie proof of the facts it contains. From Wharton's Criminal Evidence, vol. 2 (10th Ed.), p. 1099, the following is taken: "Documents evidencing official acts or proceedings are admissible in evidence when kept in the line of official duty, to establish facts relevant in the trial of criminal charges. Thus, on the trial of a clerk for embezzling postoffice funds, his quarterly report, shown to be in his handwriting, is admissible to establish the amount of money chargeable to his department. * * *"

From the same work, page 1098, the following is taken: "Where a statute requires the keeping of an official record for the public use, by an officer duly appointed for the purpose, and subject not merely to private suit but to official prosecution for any errors, such record, so far as concerns entries made in it in the course of business, is admissible in the courts of such state as prima facie proof of the facts it contains."

See, also, 16 Corpus Juris, 739; People v. Flock (Supreme Court of Michigan), 59 N. W., 237; State of Minnesota v. Ring (Supreme Court of Minnesota), 11 N. W., 233; Hockenberger v. State (Supreme Court of Nebraska), 68 N. W., 1037.

The report appears to have been made in conformity with the statute. It was signed and sworn to by appellant as tax collector of McLennan county, and shows on its face that he

collected the amount of money he is charged with having embezzled.

In his application for a change of venue, appellant alleged prejudice, and requested that the case be removed to some county adjoining McLennan county. As shown by bill of exception No. 1, the state controverted the application, and evidence was heard. It is recited in the bill that the evidence embraced in the bill of exception "as well as that evidence set out in the court's qualification" was before the court. The court reached the conclusion that the venue should be changed, but not to an adjoining county. In the order of transfer, the court recites that it appeared that in all of the counties adjoining McLennan there existed so great a prejudice against appellant as to preclude a fair and impartial trial. Further, it is recited that, in view of the fact that prejudice preventing a fair trial existed in adjoining counties, the transfer was made to Robertson county, where no conditions of prejudice appeared to exist. In qualifying the bill of exception, the court refers to the fact that appellant introduced in evidence newspaper clippings showing that some of the daily papers in McLennan county had contained detailed reports of the testimony given by the witnesses on a former trial of appellant for misapplication of public funds. It is stated in the qualification that these newspapers, by way of comment and editorially, took a determined stand against public officials who misapplied public funds, urging that their punishment should be made certain. It is further recited in the qualification that the papers in question were circulated in all of the counties adjoining McLennan county. In concluding the qualification, the court said: "The court, after having heard the testimony as set forth in this bill of exception and after having heard the above and foregoing testimony with respect to the newspaper articles contained in the News-Tribune and contained in the Times Herald, each of which newspapers extended into the adjoining counties to McLennan County, to the extent indicated by the circulation manager, and which newspapers did not extend into the counties not adjacent to McLennan County save and except to the extent indicated by the testimony of the circulation manager, the court after having heard all of said evidence entered the following order:" (The order changing the venue follows).

In view of the qualification of the court, we are unable to reach the conclusion that there was any abuse of discretion in ordering a change of venue to a county not adjoining McLennan county. Article 565, C. C. P., provides: "Upon the grant

of a change of venue, the cause shall be removed to some ad-joining county, the court house of which is nearest to the court house of the county where the prosecution is pending, unless it be made to appear to the satisfaction of the court that such nearest county is subject to some objection sufficient to author-ize a change of venue in the first instance." Article 566, C. C. P., reads: "If it be shown in the application or otherwise that all the counties adjoining that in which the prosecution is pend-ing are subject to some valid objection, the cause may be re-moved to such county as the court may think proper." See Cotter v. State, 21 S. W. (2d) 503; Sapp v. State, 223 S. W., 459.

Bill of exception No. 3 presents the following occurrence: The case was set for trial for Tuesday, January 12, 1932. Ap-pellant, through his counsel, appeared in court about nine o'clock in the morning of Monday, January 11th, at which time counsel presented a motion to quash the jury panel. Appel-lant's counsel summoned witnesses, and the court heard evi-dence; two of the jury commissioners and the district clerk, who had been subpoenaed by appellant's counsel, testifying. At the time of the presentation of the motion to quash and of the hearing thereon, appellant was not in the court room. How-ever, he arrived in Franklin, the county seat where the case was set for trial, about noon of January 11th, but did not come to the courthouse. Appellant had been under bond since his indictment, and was under bond at the time the motion to quash was heard. After having heard the evidence, the court over-ruled the motion. On Tuesday, January 12th, when the case was called for trial, the motion to quash was again presented to the court in the presence and hearing of appellant; counsel for appellant requesting the court to consider the evidence that had been heard on January 11th. The court, in the presence and hearing of appellant, overruled the motion. The matter of his absence during the hearing on January 11th was presented to the court for the first time in appellant's motion for a new trial. In qualifying the bill of exception, the trial court states that he was of the opinion from the facts and circumstances reflected by the record that appellant had voluntarily and will-fully absented himself from the hearing on January 11th. We deem the court's qualification warranted, and express the opin-ion that, under the circumstances, appellant cannot be heard to complain. In French v. State, 272 S. W., 195, it was shown that the appellant, who was under bond, absented himself from the courtroom for a short time while his counsel was arguing certain motions. The matter was called to the attention of

the court by the appellant for the first time in his motion for a new trial. In reaching the conclusion that no question was presented for review, this court, speaking through Judge Lattimore, used language as follows: "Our statute, article 837, C. C. P., sets out the grounds upon which a new trial shall be granted. We find nothing therein nor in any decision by this court holding that one who is upon bond during his trial and who voluntarily absents himself from the courtroom while his attorney is arguing a motion, and who in no wise makes known the fact of his absence to the court during the trial, and who does not show that such absence was without the consent of his counsel or the court, and who waits until after the conclusion of the court and the rendition of a verdict against him, can then thereafter successfully seek in motion for new trial to take advantage of his own act." See, also, Ex parte Cassas, 13 S. W. (2d) 869.

It might be plausibly contended that the hearing on January 11th was merely preliminary to the trial. It has been held in many decisions that it is not necessary that the accused be present in such proceedings as are merely preliminary to and not part of the trial. Littleton v. State, 239 S. W., 202, and authorities cited; Rothschild v. State, 7 Texas App., 519. However, it is unnecessary to decide the question last mentioned.

Bills of exception Nos. 4 to 9, inclusive, relate to the action of the court in refusing to sustain appellant's challenge to the array of jurors. In Robertson county jurors are selected by jury commissioners under the general law, the "Jury Wheel Law" not being applicable. The jury for the week during which appellant's trial was set, and from which several of the jurors were selected, was selected by jury commissioners. Appellant alleged in his challenge to the array that the jury commissioners had failed to comply with the provisions of the statute in selecting the jury, in that the names of the persons selected had not been drawn. The testimony heard by the court supported the averment that names had not been drawn, the jury commissioners testifying that each of the commissioners selected twelve names and that general discussion was had as to the advisability of placing such names on the jury list. Further, the commissioners testified that it was not their purpose to select jurors who would convict appellant. They said they referred to the fact that they should select intelligent men, as the case against appellant would likely be complicated. One of the commissioners said: "We did not discuss the case as we selected each individual citizen. That was mentioned once when we first started, by Mr. Bartlett. We did not discuss that on

each man. Take juror No. 1 that we selected for the week: I knew at the time I put his name on the list, at the time I selected him, that he would be a juror for the second week and the same is true of each of the twelve men I selected. But that was only mentioned may be one time before we started on the second week."

It was not shown that any prejudiced jurors were selected. The testimony of the jury commissioners failed to show that they acted corruptly, or that they performed their duties with any intention of selecting prejudiced men who would convict appellant. On the contrary, their testimony negatives such conclusion. Article 608, C. C. P., relating to the challenge to the array in capital cases, reads as follows: "Either party may challenge the array only on the ground that the officer summoning the jury has willfully summoned jurors with a view of securing a conviction or an acquittal. All such challenges must be made in writing setting forth distinctly the grounds of such challenge. When made by the defendant, it must be supported by his affidavit or the affidavit of any credible person. When such challenge is made, the judge shall hear evidence and decide without delay whether or not the challenge shall be sustained. This article does not apply when the jurors summoned have been selected by jury commissioners."

Article 641, C. C. P., relating to challenge to the array in cases other than capital, provides: "The array of jurors may be challenged by either party for the causes and in the manner provided in capital cases."

Under the terms of the statute, a challenge to the array cannot be made to a jury selected by jury commissioners. In Walker v. State, 267 S. W., 988, 989, in construing the statutes in question, this court, speaking through Judge Hawkins, said: "Article 681, C. C. P., explicitly denies the right to challenge the array when the jurors summoned have been selected by jury commissioners." See, also, Columbo v. State, 145 S. W., 910; Whittle v. State, 66 S. W., 771.

As shown in bill of exception No. 19, at the time appellant's report for the month of December was admitted in evidence, an employee of the state comptroller's department testified that such report indicated that $44,970.17 had been collected for the ad valorem fund and $44,923.90 had been collected for the road bond fund for December, 1930. This report went to the jury without objection. However, appellant objected to the testimony of the witness on the ground that it was hearsay and a conclusion. If the witness should not have been permitted to give the testimony, and this is not conceded, we are unable to

perceive how, under the facts reflected by the record, appellant could have been harmed. It was uncontroverted that appellant had collected the amount of money shown in his report. He had stated to the county judge and commissioners' court that such sums had been collected. The report itself, under the authorities we have heretofore pointed out, was prima facie evidence of the facts stated therein.

Appellant brings forward several bills of exception in which complaint is made of the argument of the county attorney. We deem it necessary to discuss but one of these bills. Bill of exception No. 38 shows that the county attorney held in his hand, while closing the argument, appellant's report for the month of December, 1930, which had been introduced in evidence. Exhibiting this report to the jury, the county attorney said: "Arthur Mills swore that. He got it. He didn't swear that one of those faithful men or loyal women who work for him loyally, efficiently, faithfully and uncomplainingly got a dime of that money. He swore right here (counsel here designating the sworn summary of taxes collected, shown in the statement of facts as exhibit 2, and introduced in evidence during the trial) that he got it—he, Arthur L. Mills, and this record will reflect the money that came into my hands as 'Tax Collector.'"

Appellant objected to the argument on the ground that it constituted a reference to his failure to testify. The court overruled the objection. We think the trial court was warranted in reaching the conclusion that counsel for the state was not referring to the fact that appellant had not taken the witness stand and testified, but that he was confining his remarks to the sworn statement which was properly in evidence. In other words, the trial court was warranted in concluding that counsel was calling the jury's attention to the fact that in his report appellant had sworn that he received the money, and that in such report he had not stated that any of his employees had collected any of the money shown therein.

We have discussed all questions submitted in oral argument. The record is voluminous and we have not undertaken to discuss all of the bills of exception brought forward. Nevertheless each bill has been carefully examined. We are constrained to hold that no reversible error appears.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—The statement of facts is comparatively short, but the transcript consists of 496 pages, containing fifty-one bills of exception, with correspondingly voluminous briefs. The motion for rehearing again stresses many of the points discussed in our original opinion, with the insistence that we arrived at the wrong conclusion. We think a further discussion of questions decided originally is not called for, save the one to which we later advert. We have again reviewed them, and remain of the opinion expressed originally. Our attention is also called to several bills of exception which were not discussed in the original opinion. They were not overlooked then. They have been again examined, and it is thought none of them presents error upon which a reversal could be properly predicated. We have used our best effort not to overlook any matter presented in such an extensive record.

Appellant insists that we reached a wrong decision regarding his complaint at the trial court's action in not sustaining the criticism of the manner in which the jury panel for the week was selected; this same point, in slightly different form, being presented in bills of exception three to nine, inclusive.

Article 2110 and 2111, R. C. S. (1925), provides substantially that the jury commissioners shall select from the citizens of the county the number of jurors directed by the court, they to be of good moral character, of sound judgment and well informed; that the commissioners *shall write the names of the persons so selected on separate pieces of paper, as near the same size and appearance as may be, and fold the same so that the names cannot be seen, and deposit the names in a box, which shall be well shaken and the names mixed, after which the commissioners shall draw therefrom the names which shall be recorded as drawn to make up the jury panels of as many jurors for each week as the court has designated.* One ground of challenge to the array of the jury for the wek was that in selecting it the provisions of the statute indicated by italics had not been complied with. The question might be dismissed with the statement that a challenge to the array is not permitted upon the ground urged. See articles 608 and 641, C. C. P.; Whittle v. State, 43 Texas Crim. Rep., 468, 66 S. W., 771; Walker v. State, 98 Texas Crim. Rep., 663, 267 S. W., 988; Bryant v. State, 97 Texas Crim. Rep., 11, 260 S. W., 598; Columbo v. State, 65 Texas Crim. Rep., 608, 145 S. W., 910; Powell v. State, 99 Texas Crim. Rep., 276, 269 S. W., 443. We regard the provision of the statute now under consideration as

directory rather than mandatory. See Compere v. State, 107 Texas Crim. Rep., 95, 295 S. W., 614; Coker v. State, 7 Texas App., 83; Buchanan v. State, 107 Texas Crim. Rep., 559, 298 S. W., 569. Some three or four jurors drawn by the jury commissioners sat on the jury which tried appellant. Some of the bills of exception relate to each of said jurors, it evidently being an effort on the part of appellant to present challenges for cause to them individually. No ground for such challenge is urged save the same matters contained in the motion to suppress the entire panel for the week. Whatever form in which the challenge came, it was necessarily an attack on the jury for the week as a whole. But whether it be regarded as a challenge to the array or to the jurors individually, we think the action of the court in overruling it presents no error.

We do not intend by what has been said above to intimate that the court would have no power to protect an accused where the jury commissioners may have acted corruptly in a particular case in selecting a list of jurors to secure a conviction of accused. That the court does have such power is clearly shown in Cavitt v. State, 15 Texas App., 190, and Whittle v. State, 43 Texas Crim. Rep., 468, 66 S. W., 771. The evidence heard by the court in the present case fails to show any corrupt or improper motive or acts on the part of the jury commissioners. It does show that the commissioners knew appellant's case was to be tried at the term of court for which the jurors were selected, and that one of the commissioners said the case would perhaps be complicated. If that knowledge operated on the mind of the commissioners at all, it seems clear it was only to the end that they used unusual care to select jurors such as the statute enjoins, those of *good moral character, of sound judgment, and well informed.* Articles 2110 and 2111, R. C. S. (1925). The evidence fails to show that any man was selected as a juror who was known or thought to be biased or prejudiced against accused.

The case was set for trial for Tuesday, January 12th. Attorneys for appellant desired to present a challenge to the array of the jury for the week. It is apparent from the record that they thought it would be necessary, or at least proper, to present the motion before the jury was sworn in for the week. They appeared in court on Monday morning and advised the judge that they desired to present the motion and introduce evidence thereon, which the judge permitted them to do. The whole proceeding was at the instance of attorneys representing appellant. The state called no witnesses. After hearing the evidence, the motion was overruled. Appellant was not present,

although he had sworn to the motion before a notary public in McLennan county on the 9th day of January. No question of appellant's absence was raised at the time the court ruled on the motion on Monday. That point was not presented until the motion for new trial was filed. It was urged on original submission, and is again insisted upon in the motion for rehearing, that this judgment must be reversed because in appellant's absence the court heard evidence on the challenge to the array. No case has been called to our attention where the question arose as it did here. We cannot forbear to say the situation is unique in that appellant now finds himself in the attitude of saying that the court had no right in appellant's absence to hear the evidence which his own counsel tendered at a time sought by them, but does insist that this identical evidence should be considered in support of the challenge to the array. It has been many times held that the selection of the jury is an important part of the trial, and that appellant should be present, but the cases so holding have reference to securing the jury which is to actually try the case, and not to passing on matters pertaining to the venire or panel of jurors for the week from which the trial jury is obtained. In our original opinion it was intimated that the hearing on January 11th was a matter preliminary to the trial. We are still strongly inclined to that view. It has been held that many things may be done preliminary to a trial in the absence of accused, such as entering an order for change of venue, transferring a case from one court to another in the same county, entering an order for or drawing a special venire, setting a case down for trial, or continuing a term of court which is about to expire. See Rothschild v. State, 7 Texas App., 519; Parr v. State, 1 S. W. (2d) 892; Phipps v. State, 100 Texas Crim. Rep., 607, 272 S. W., 209; Ehrlich v. State, 103 Texas Crim. Rep., 454, 281 S. W., 548; Littleton v. State, 91 Texas Crim. Rep., 205, 239 S. W., 202; Cordova v. State, 6 Texas App., 207; Oliver v. State, 70 Texas Crim. Rep., 140, 159 S. W., 235. It is not necessary, however, to rest the disposition of the matter on the foregoing suggestion.

On Tuesday, January 12th, when the case was called for trial, and when appellant was present, the motion to challenge the array of jurors was renewed, and attorneys for appellant asked the court to consider in support of the motion the evidence which had been offered by them on Monday, which the court said he would do, and then in the presence and hearing of appellant again overruled the motion. Appellant makes the point that the request of his attorneys then made for the court to consider the testimony which had been offered in appellant's

absence, and the court's statement that he would do so, does not suffice, but that the evidence should in fact have been reintroduced. He cites cases supporting his position. Most if not all of them are cases where some evidence was introduced by the state before the jury in the absence of accused. We regard Powers v. State, 23 Texas App., 45, 5 S. W., 153, and the reasoning of the court therein, as having closer application to the present facts. In that case Adams, a prospective juror, was examined in the absence of accused, and was peremptorily challenged by the state, and the court discharged him. It was then discovered that accused had been absent. The court made a futile effort to get Adams back in court so that he might be challenged in accused's presence, but, failing in this, the court ordered the selection of the jury to proceed. Powers insisted that the incident which occurred in his absence was fatal to the conviction. In writing on the point, Judge White said: "A selection of the jury is beyond doubt one of the most important features of a trial for a capital felony, and we can well imagine how important it is ordinarily for a defendant to be present during such proceedings. But in any case, when a rule is invoked for non-observance, there should at least appear some slight reason why it should have been observed. It is a maxim that, as a general thing, where the reason of a rule fails, the rule ceases to be obligatory or operative. Now, the talesman Adams had been peremptorily challenged by the state. What possible injury could inure to defendant because the talesman could not be found and brought back, so that the state might again challenge him in defendant's presence? We confess we cannot imagine. Under the circumstances disclosed, if error was committed, it was manifestly harmless error, for which no just ground of complaint can lie." In Cartwright v. State, 97 Texas Crim. Rep., 230, 259 S. W., 1085, we had occasion to quote with approval from the opinion in Powers' case, and, in making application of it to the facts in Cartwright's case, said: "Where the record shows the absence of accused during any important step of the trial, or even raises the question of possible injury from something occurring in his absence during the trial, this court would not feel called upon to speculate upon the matter, but the record in the instant case presents no such state of affairs. It affirmatively shows that no injury could or did result to appellant, and the reasoning of Judge White in the Powers case, supra, applies with equal force to the question now before us."

We are of opinion the disposition of the questions raised

may be rested upon the principle recognized in the cases last referred to.

Believing the case has been properly disposed of, the motion for rehearing is overruled.

*Overruled.*